**COLORADO LABOR COUNCIL, AFL-CIO, an unincorporated association, et al., Plaintiffs,**

v.

**AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS, an unincorporated association, et al., Defendants.**

**Civ. A. No. C-4342.**

United States District Court, D. Colorado.

Oct. 2, 1972.

Philip Hornbein, Jr., and Roy O. Goldin, Denver, Colo., for plaintiffs.

Thomas E. Harris, Associate Gen. Counsel, AFL–CIO, Washington, D. C., and MacDonald & Fattor of counsel by Donald P. MacDonald and James C. Fattor, Denver, Colo., for defendants.

## MEMORANDUM OPINION

WINNER, District Judge.

This memorandum opinion contains the findings of fact and conclusions of law required by Rule 52 and it is intended to meet the requirements of Rule 65 of the Rules of Civil Procedure.

The amended complaint was filed September 25, 1972, and an answer and counterclaim was filed shortly thereafter. The matter was heard on September 28, 1972, on cross motions for a preliminary injunction.

The Colorado Labor Council is an unincorporated association of labor unions in Colorado. It is affiliated with the American Federation of Labor and Congress of Industrial Organizations, and it is an organization known in labor parlance as a central body. Roth is the president and Toffoli is the secretary-treasurer of the Colorado Labor Council. The American Federation of Labor and Congress of Industrial Organizations is an unincorporated association and it is a labor organization within the meaning of that term as defined in 29 U.S.C. § 402(i). Meany is the president and Healy is a regional director of the AFL–CIO, and Healy has been named by Meany to act as trustee of the Colorado Labor Council.

On July 19, 1972, the AFL–CIO Executive Council adopted this statement:

"Under the circumstances, the AFL–CIO will refrain from endorsing either candidate for the office of President of the United States.

"Those circumstances call, rather for the maximum concentration of effort upon the election of Senators and Representatives whose records commend them to the working people of America.

*"Affiliates are, of course, free to endorse and support any candidate of their choice."* [emphasis supplied.]

Mr. Meany wrote all state and local central bodies on July 21, 1972, advising them of the Executive Council's policy statement, and he said, "The term 'affiliates' in this policy statement refers only to national and international unions." He reminded them that Rule 4 of the AFL–CIO requires that state and local central bodies conform their activities on national affairs to AFL–CIO policies, and, indeed, the rule says just that. The Colorado Council interpreted the Executive Council's action as permitting endorsement by it of the candidate of the Colorado Council's choice, and Roth urged endorsement of Senator McGovern, as did the Council's Committee on Political Education [COPE]. The next day, by telegram, President Meany reminded the individual plaintiffs of the AFL–CIO Executive Council's action and of his interpretation of the word "affiliates" as used in the Council's policy statement. His telegram said:

" . . . the Council is in violation of the AFL–CIO Constitution and Rules Governing State Central Bodies and you are hereby directed to take immediate steps to rescind that action and to so advise this office."

The same day, Mr. Roth sent copies of the Colorado resolution to all members of the AFL–CIO Executive Council, to the AFL–CIO Central Bodies and to Mr. Meany. He asked a ruling from Mr. Meany. Shortly after receipt of the letter of August 8, 1972, Mr. Meany advised Roth by telegram that the action of the Colorado body violated the AFL–CIO constitution and rules governing state central bodies, and the telegram said, "The Council is again accordingly hereby directed immediately to rescind its resolution endorsing the McGovern ticket." He set an August 21, 1972, deadline for the taking of the directed action, and he said that if such action were not taken, "I shall have no alternative to instituting disciplinary proceedings against the Council and its officers under the AFL–CIO Constitution and Rules Governing Central Bodies." On August 17, 1972, the Colorado Executive Board refused to comply with President Meany's directives, and preparations for war were commenced.

On the deadline date, a Notice of Hearing was sent by Mr. Meany to the Colorado Council and its officers. The charges were set forth in the hearing notice, and plaintiffs were charged as follows:

"It is charged that the Colorado Labor Council AFL–CIO, its President, Herrick S. Roth, and its Secretary-Treasurer, A. Toffoli, have violated and failed to comply with Rule 4 of the Rules Governing AFL–CIO State Central Bodies, and that they have engaged in a course of conduct which is detrimental to the best interests of the AFL–CIO, and have failed to conform the policies of the Colorado Labor Council, AFL–CIO, to the policies of the AFL–CIO.

"These charges are based on the following specifics:

"On July 19, 1972, the AFL–CIO Executive Council resolved that the AFL–CIO would not endorse either candidate for President of the United States. The President of the AFL–CIO advised the Colorado Labor Council of this action, and further advised it that, while national and international unions affiliated with the AFL–CIO were free to endorse any candidate of their choice, this freedom did not extend to AFL–CIO state or local central bodies, which as subordinate bodies of the AFL–CIO, were required to conform their policies on national affairs to those of the AFL–CIO. President Roth and Secretary-Treasurer Toffoli nevertheless continued to take the position that Colorado COPE was free to make an endorsement and to urge that it endorse Senator McGovern. On August 7, 1972, the Committee on Political Education of the Colorado Labor Council, AFL–CIO, adopted a resolution endorsing Sena-

tor McGovern for President. It also adopted a motion that the resolution be submitted to the President of the AFL–CIO for his ruling under Rule 4.

"Thereafter, the President of the AFL–CIO again advised the Colorado Labor Council that AFL–CIO state and local central bodies are not permitted to endorse any candidate for President and that the Colorado Labor Council endorsement of Senator McGovern placed it in violation of the AFL–CIO Constitution and Rules and must be rescinded. Notwithstanding these communications from the President of the AFL–CIO, the Colorado Labor Council, AFL–CIO, has not rescinded its endorsement of Senator McGovern."

The hearing notice designated hearing officers and fixed a hearing date which was later continued at the request of Mr. Roth to August 30, 1972. The press was excluded from the hearing, counsel were not allowed to participate, and, to put it mildly, a review of the transcript of those proceedings convinces that the command of the United States Supreme Court in New York Times Co. v. Sullivan (1964) 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, was obeyed to its fullest. The comment to which we refer is that which says that we have "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks (on others)."

The hearing officers prepared a written report and submitted it to President Meany on September 15, 1972. The full report is an exhibit in the case and it concluded:

"On the basis of the evidence adduced at the hearing and summarized herein, we find that the Colorado Labor Council, AFL–CIO, its President, Herrick S. Roth, and its Secretary-Treasurer, A. Toffoli, have violated and failed to comply with Rule 4 of the Rules Governing AFL–CIO State Central Bodies, and that they have en-

gaged in a course of conduct which is detrimental to the best interests of the AFL–CIO, and have failed to conform to the policies of the Colorado Labor Council, AFL–CIO, to the policies of the AFL–CIO." (sic)

Four days later, President Meany signed his Decision and Order which approved and accepted the hearing officers' report. The decision ordered suspension of the Colorado Council, the individual plaintiffs here, and all members of the Executive Board of the Colorado Council. The defendant Healy was appointed trustee "to take charge of and conduct the business of the Colorado Labor Council." This lawsuit followed, and in it plaintiffs ask the Court to enjoin the trusteeship, and defendants counterclaim and ask injunctive relief requiring recognition by the plaintiffs of the trusteeship and ask the Court to order plaintiffs to comply with the orders issued to them by Mr. Meany. In the meantime, the parties have been operating under a sort of armed truce awaiting this Court's decision, and the need for immediate decision is emphasized by the fact that a convention of the Colorado Labor Council has been called for October 4, 1972. If we hold that the trusteeship is valid, the trustee will call off the convention; if we hold the trusteeship is invalid, the convention will go forward under the aegis of Roth, Toffoli and the Executive Board of the Colorado Council.

In this case, there is but one issue, and matters not in dispute should be separated from it:—

1. Neither the Colorado Labor Council nor the AFL–CIO claims any right to, (a) dictate or control anyone's vote; (b) curtail any individual's freedom to voice any political views he or she may have, or (c) control the endorsement by any labor union [as distinguished from a central body] of any political candidate, including presidential candidates.

2. The AFL–CIO claims no right to restrict political endorsements by central bodies, except endorsements by

those bodies of candidates for President and Vice-President.

3. The Colorado Labor Council asks only that it be permitted to attempt to persuade—not to intimidate, dominate or control voters in the marking of their presidential ballot.

4. The Colorado Labor Council says that it has, and the AFL–CIO says that the Council does not have a present right to endorse a presidential ticket. This is the only dispute before us, albeit the parties attack the problem with an imposing array of arguments, only one of which we today resolve.

Although we today decide only one of the arguments, we summarize the contentions made simply to demonstrate the complexity of the situation.

The Colorado Labor Council argues that it is subject to the provisions of the Labor-Management Reporting and Disclosure Act of 1959; that the bill of rights of that act is fully applicable, and that a trusteeship can be imposed on it only if the tests of 29 U.S.C. § 462 [Sec. 302 of the Act] are met. The section provides:

"Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial mal-·practice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization."

Additionally, 29 U.S.C. § 464(c) says that when, after a fair hearing, a trusteeship is established by a labor organization in accordance with the procedural requirements of its constitution and bylaws, the trusteeship shall be presumed valid for a period of 18 months and that it can be upset only "upon clear and con-vincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under Sec. 302 (of the Act)." Here, the "purpose allowable under Sec. 302," of the Act is said by defendants to be, "otherwise carrying out the legitimate objects of such labor organization."

Plaintiffs take these positions:

1. The trusteeship was not created on any ground set forth in Sec. 302 of the Act.

2. The action taken by the AFL–CIO was not taken in accordance with the constitution and bylaws of the AFL–CIO.

3. The trusteeship was ordered without complying with the requirements of 29 U.S.C. § 464(c) requiring a fair hearing.

4. Plaintiffs' right to endorse a presidential candidate of their choice is a right protected by the First Amendment, by the Bill of Rights of the Labor-Management Reporting and Disclosure Act [29 U.S.C. § 411] and by the Constitution of the AFL–CIO.

5. The action of the AFL–CIO Executive Council did not prohibit the endorsement of Senator McGovern by the Colorado Labor Council.

In answer, defendants say:

1. There are contractual relationships between the AFL–CIO and the Colorado Labor Council resulting from the AFL–CIO Constitution, the Rules Governing AFL–CIO State Central Bodies and the Charter issued by the AFL–CIO to the Colorado Labor Council. Defendants say that the Colorado Labor Council has by contract agreed to permit the AFL–CIO to have exclusive jurisdiction over the endorsement of candidates for the offices of President and Vice-President of the United States, and, say defendants, the action of the Colorado Labor Council violates the agreements between the parties.

2. The hearing afforded plaintiffs was fair, and the action of the AFL–CIO Executive Council was fair.

3. The actions of President Meany were authorized, and he had a right to define the word "affiliates."

4. The Colorado Labor Council violated Rule 4 in that it engaged in a course of conduct detrimental to the best interests of the AFL–CIO and in that it failed to conform its policies to those of the AFL–CIO.

5. The trusteeship has been lawfully created, and defendants are entitled to injunctive relief on their counterclaim to enforce the trusteeship.

■ We first face up to a threshold jurisdictional question. In their complaint, plaintiffs say jurisdiction is founded on 29 U.S.C. § 412 and § 464, and on 28 U.S.C. § 1337. Defendants admit jurisdiction in their answer. However, as part of their argument, defendants say that although the AFL–CIO is a labor organization, the Colorado Labor Council is not.[1] Moreover, say defendants, 29 U.S.C. § 464 is not applicable to the Colorado Labor Council. This argument rests on defendants' interpretation of the Congressional Record while the Bill was under consideration by the Senate and the House and upon a claimed compromise reached between Senators Kennedy and Goldwater as to the impact and coverage of this section. We leave for later determination the resolution of this question, should such determination become necessary. However, 29 U.S.C. § 412 confers jurisdiction over any claim of infringement of rights granted by the Act, § 462 of that title mentions trusteeships established by a labor organization "over a subordinate body," § 463 has to do with trusteeships of a "subordinate body of a labor organization;" § 464 gives jurisdiction to the Court over any suit brought by a member of a subordinate body of a labor organization affected by a violation of the Act, and 29 U.S.C. § 464 is one of the Act's sections relied on most strongly by defendants because of its statutory presumptions of validity of trusteeships. On final argument, plaintiffs' counsel emphatically asserted jurisdiction, while defendants' counsel were wishy-washy and refused to take a position on the question. Again without determination at this time as to whether the Colorado Labor Council is a labor organization for trusteeship purposes under the Act, it is undeniably a subordinate body of a labor organization, and we find and conclude that we do have jurisdiction of the case.

Defendants argue that totally apart from any provisions of the Labor-Management Act, the AFL–CIO has a right to impose the present trusteeship. They point out that the Colorado Labor Council has agreed to abide by the rules of the AFL–CIO; that Rule 4 says that state central bodies "shall conform their activities on national affairs to the policies of the AFL–CIO," and that they shall "assist in furthering the appropriate objects and policies of the AFL–CIO." Rule 25 authorizes the president to take disciplinary action against state central bodies and its officers "when such organization or officer violates or fails to comply with any of the provisions of the Constitution of the AFL–CIO or of these rules." If disciplinary action is taken, notice and hearing is required, and Rule 25 says, "The decision of the President shall be in full force and effect unless or until reversed or changed upon appeal as provided in paragraph (g) of this rule." Provision is made for appeal of presidential disciplinary decisions to the Executive Council and from the Executive Council to the next convention of the AFL–CIO.[2] The bylaws of Colorado COPE say that "it shall operate in conformity with the policies of the national AFL–CIO and its national Committee on Political Education," and the model bylaws provide, "Endorsement of candidates for Presi-

---

1. Defendants say that they are a labor organization, because the AFL–CIO constitution makes some labor unions affiliates.

2. With the national election set for five weeks from now, these appeal provisions afford little or no chance for relief to plaintiffs.

dent and Vice-President shall be made by the AFL–CIO. The State COPE shall follow the endorsement of the national AFL–CIO." Colorado-COPE's by-laws say that "it shall operate in conformity with the policies of the national AFL–CIO and AFL–CIO COPE." Additionally, they say, "Endorsement of candidates for President and Vice President shall be made by the national AFL–CIO. The Colorado COPE shall follow the endorsement of the national AFL–CIO."

It is upon these and other similar constitutional, by-law and rule provisions that defendants rest their argument that plaintiffs have contractually agreed to confer exclusive jurisdiction on the AFL–CIO to endorse candidates for President and Vice-President of the United States. Defendants rely on National Assn. of Letter Carriers v. Sombrotto (1971) 2 Cir., 449 F.2d 915 and Parks v. IBEW (1963) 4 Cir., 314 F.2d 886.

■ Defendants also argue that plaintiffs' suit is premature because they have failed to exhaust their remedies within the union. This argument we reject on authority of United Brotherhood of Carpenters and Joiners of America v. Brown (1965) 10 Cir., 343 F.2d 872. Judge Hill there said:

> "Appellants also contend that the judgment must be reversed and the action dismissed for the reason that the plaintiffs have failed to exhaust the internal remedies afforded by the United Brotherhood's Constitution and Laws as required by section 101(a)(4) of the Act, 29 U.S.C. § 411(a)(4). We do not agree. Section 101(a)(4) is applicable only where individual violations of the so-called Bill of Rights provisions are alleged *and does not apply where, as here, the validity of a trusteeship is being challenged.*" [emphasis supplied.]

Plaintiffs say that the hearing is fairly comparable to the trial of the mouse in Alice in Wonderland—" 'I'll be judge, I'll be jury,' said cunning old Fury; 'I'll try the whole cause and condemn you to death,' " and plaintiffs say that the hearing was a nullity because of its inherent unfairness. Defendants say that Parks v. IBEW, supra, answers and rejects plaintiffs' arguments concerning the fairness of the hearing.

At the time of the hearing plaintiffs did not press their First Amendment claims, and, although they did not withdraw them, they acknowledged that under cases such as Reid v. McDonnell Douglas Corp. (1971) 10 Cir., 443 F.2d 408, these claims are tenuous. This acknowledgment, of course, went only to the First Amendment claims and plaintiffs did not in any way retreat from their claims under the statutory Bill of Rights.

Finally, defendants argue that the right to control the internal affairs of the AFL–CIO and its affiliated subordinates should be equated to cases involving the right of churches to control their affairs and their doctrine. Defendants here rely on Watson v. Jones (1871) 13 Wall. 679, 80 U.S. 679, 20 L. Ed. 666; Dedroff v. St. Nicholas Cathedral (1952) 344 U.S. 94, 73 S.Ct. 143, 97 L.Ed. 120, and Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Presbyterian Church (1968) 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658. Undeniably, in Watson v. Jones it was held:

> "The right to organize voluntary religious associations to create tribunals for the decisions of controverted questions of faith within the association and for the ecclesiastical government of all the individual members of congregations and officers within the general association is unquestioned. All who unite themselves to such a body do so with an implied consent to this government and are bound to submit to it."

As we reach our immediate problem, we pay tribute to the skill of counsel in the preparation of their able briefs and arguments in the extremely limited time available to them, but we are fully aware of the fact that neither the Court nor counsel have had adequate time to

fully research the many troublesome questions presented. For that reason, rather than to shoot from the hip, we reserve judgment on almost all of those questions, and on these cross-applications for preliminary injunctions, we decide only those questions necessary to determine our jurisdiction [including the exhaustion of remedies question] and a single question which permits a ruling on a temporary injunction.

Preliminary injunctions have been likened to the issuance of an execution before judgment or to a judgment or execution before trial. American Smelting & Refining Co. v. Godfrey, 8 Cir., 158 F. 225; 42 Am.Jur.2d, Injunctions, § 13, p. 741. Their purpose is to preserve the status quo, and the status quo to be preserved is the last status which existed before the controversy arose. Steggles v. National Discount Corp., 326 Mich. 44, 39 N.W.2d 237. See annotation, 15 A.L.R.2d 237, § 4. The Tenth Circuit said in Continental Oil Company v. Frontier Refining Company (1964) 338 F.2d 780:

"The function of a preliminary injunction is to preserve the status quo pending a final determination of the rights of the parties. It should be issued only where the plaintiff makes out a prima facie case showing a reasonable probability that he will ultimately be entitled to the relief sought and that irreparable damage will possibly result if the relief is not granted pendente lite. But, it has been said that: '. . . To justify a temporary injunction it is not necessary that the plaintiff's right to a final decision, after a trial, be absolutely certain, wholly without doubt; if the other elements are present (i. e., the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation.'"

More recently, the Tenth Circuit said in Crowther v. Seaborg (1969) 415 F.2d 437:

"In hearings upon motions for temporary or preliminary injunctive relief, the burden is upon the one requesting such relief to make a prima facie case showing a reasonable probability that he will ultimately be entitled to the relief sought. The applicant has the additional burden of showing a right to the specific injunctive relief sought because of irreparable injury that will result if the injunction is not granted. There must exist a probable right and a probable danger."

Moreover, in passing upon defendants' cross-motion for a preliminary injunction, because such injunctions are designed to preserve the status quo, mandatory as opposed to prohibitive relief is seldom granted.

In comparing the hardships involved, the scales tip decidedly in plaintiffs' favor. The record establishes that the Colorado Labor Council and its suspended officers have contributed through its programs not only to the labor movement but to the general welfare of the State of Colorado. It is actively engaged in programs designed to alleviate some of the gravest problems confronting our country today. Chancellor Mitchell of the University of Denver emphasized the contributions being made to the State's welfare by plaintiffs, and whether those programs could or would be continued by defendant Healy is unclear from the record. There is a definite public interest in the continuation of these programs, and public interest, of course, is a factor to be weighed by a court in passing on an application for a preliminary injunction. Additionally, the convention of the Colorado Labor Council has already been called and it will open day after tomorrow. And we remind that the United States Supreme Court said in Williams v. Rhodes (1968) 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24:

"The right of individuals to associate for the advancement of political be-

liefs . . . rank[s] among our most precious freedoms."

Except for our preliminary determinations that we have jurisdiction and that the suit is not barred under the exhaustion of remedies doctrine, we come to the question of the validity of President Meany's interpretation of the word "affiliates," and all other questions we reserve to be answered on final hearing of this matter. Article III of the AFL–CIO Constitution is entitled "Affiliates," and Section 1 thereof says:

"The Federation shall be composed of (1) affiliated national and international unions and organizing committees, (2) directly affiliated local unions (such as Local Trade Unions, Federal Labor Unions, and Local Industrial Unions) and national councils thereof, (3) state and local central bodies (such as State and Territorial Federations, City Central Labor Unions and Industrial Union Councils), and (4) trade and industrial departments."

Section 5 of that same Constitutional article says:

" . . . Local Central Bodies affiliated with the American Federation of Labor at the time of the adoption of this Constitution, and State and Local Industrial Union Councils affiliated with the Congress of Industrial Organizations at the time of this constitution [CLC comes within this definition] *shall become and be affiliates of this Federation . . .* "

By AFL–CIO constitutional definition, then, the Colorado Labor Council is an *affiliate* of the American Federation of Labor and the Congress of Industrial Organizations. In the July 19, 1972, policy statement of the Executive Council of the AFL–CIO it was spelled out that:

"Affiliates are, of course, free to endorse and support any candidate of their choice."

■ It is hornbook law that words are presumed to be used in their ordinary meaning, and where words are defined in an organization's constitution, they must be presumed to be used by that organization as it has defined them. These presumptions were called to the attention of defendants' counsel during final argument, and the Court offered defendants an opportunity to reopen their case to present any expert testimony they wished as to a trade or union rule or custom applying a different meaning to the word "affiliate" in matters involving trusteeships or political endorsements. The Court's invitation to present such testimony was not accepted.

■■ Defendants argue that President Meany is empowered to interpret AFL–CIO rules, but we are not talking about a rule. We are talking about the meaning of a constitutionally defined word. Nor are we talking about an interpretation. We are talking about the application of a meaning diametric to the constitutionally defined meaning. Power to interpret is not power to make complete change. President Meany's interpretation of the word "affiliates" amounted to an attempted amendment of the AFL–CIO Constitution. He has no power to individually amend the organization's constitution, and the Executive Council's policy statement must be read to use the word "affiliates" as that word is used in the AFL–CIO Constitution. Had the Executive Council intended to grant the freedom to endorse to a limited type of affiliates it could have easily said so, and surely the Executive Council of the AFL–CIO must have known how that word is defined in the constitution. [We hasten to add that by this comment we express no opinion as to whether any such limitation by the Executive Council would or would not be valid. We say only that the Executive Council did not so limit the right of freedom to endorse, and its power to do so is not before us.] On argument, counsel suggested that this is what the members of Council had in mind. If so, it is not what the Council said, and we know of no authority which permits a Court to engage in mind reading.

With what we have said, then, not only do the scales tip strongly in plaintiffs' favor when the hardships are put in balance, but, additionally, plaintiffs have shown "a probable right and a probable [actually an existing] danger." We believe that plaintiffs have satisfied the requirements of Continental Oil Company v. Frontier Refining Company, supra, and Crowther v. Seaborg, supra. We must and we shall comply with the command of Rule 65 and of Atomic Oil Company of Oklahoma v. Bardahl Oil Company (1970) 10 Cir., 419 F.2d 1097:

"Rule 65(c) states in mandatory language that the giving of security is an absolute condition precedent to the issuance of a preliminary injunction."

The bond, of course, must be conditioned "for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."

Accordingly, defendants' motion for a preliminary injunction is denied and plaintiffs' motion for a preliminary injunction is granted.

Pending further order of this Court, defendants, and each of them, and all persons acting in concert with them, acting in reliance on the rights and claims asserted by them in this action, are hereby enjoined from taking control, or attempting to take control, of the Colorado Labor Council, its records, assets, offices, employees, affairs or operations by means of imposition of a trusteeship upon the Colorado Labor Council and from interfering or attempting to interfere with the official acts or actions of the officers of the Colorado Labor Council and the members of its Executive Board and with the conduct of the business of the Colorado Labor Council.

This injunction shall become effective upon the posting of bond with the Clerk of this Court in the amount of $5,000.00, such bond to be adequately secured, and to be conditioned as required by Rule 65(c) of the Federal Rules of Civil Procedure.