DISTRICT COUNCIL 37, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL–CIO, and Arthur Tibaldi, as Treasurer of District Council 37, American Federation of State, County and Municipal Employees, AFL–CIO, Plaintiffs,

v.

Jerry WURF, as President of American Federation of State, County and Municipal Employees, AFL–CIO, and American Federation of State, County and Municipal Employees, AFL–CIO, Defendants,

and

James Butler, as President of New York City Department of Hospitals, Local 420, American Federation of State, County and Municipal Employees, AFL–CIO, Intervenor.

No. 79 Civ. 5933.

United States District Court, S. D. New York.

June 6, 1980.

Hartman & Craven, New York City, for plaintiffs.

Zwerdling & Maurer, Washington, D. C., for defendants.

Sipser, Weinstock, Harper, Dorn & Leibowitz, New York City, for intervenor.

## MEMORANDUM AND ORDER

OWEN, District Judge.

Before me is a motion for a preliminary injunction. Plaintiff, District Council 37, American Federation of State, County and Municipal Employees, AFL–CIO ("D.C. 37" or the "Council"), seeks a declaratory judgment that a certain resolution (the "Resolution") of its superior body, the International Executive Board ("I.E.B.") of the American Federation of State, County and Municipal Employees, AFL–CIO ("AFSCME" or the "International"), is unlawful, null and void. The Resolution, dated October 16, 1979, concerns the staffing and payment of the representatives serving a local union affiliated with D.C. 37.[1] Normally, these services are provided by D.C. 37, but the Resolution in question has altered this arrangement, permitting the local to select and finance its own staff. The local union involved, the New York City Department of Hospitals, Local 420, American Federation of State, County and Municipal Employees, AFL–CIO ("Local 420"), intervened in this action, and now moves for a preliminary injunction to compel D.C. 37 to comply with the original I.E.B. Resolution and a subsequent resolution implementing the October 16, 1979 resolution.

The instant dispute appears to have been generated by political tensions that developed between Local 420's President, James Butler, and D.C. 37's Executive Director, Victor Gotbaum. In November 1978, D.C. 37 launched an investigation into allegations that Butler had failed to properly account for substantial amounts of union funds expended by him. At the direction of Victor Gotbaum, D.C. 37 Staff Representatives informed members of Local 420 of the charges against Butler. The Staff also advised Local 420 members that they had a right to demand an accounting from Butler.[2] The Local 420 Executive Board (the "Local 420 Board") and Butler regarded these activities as an unjustified attempt by D.C. 37 and Gotbaum to undermine the authority of Local 420's officers. In retaliation, the Local 420 Board determined to prevent the D.C. 37 staff from further serving Local 420. Local 420 presented its grievances to the I.E.B. seeking, among other things, reimbursement of the costs of securing its rights and permission to disaffiliate from D.C. 37. After an unsuccessful attempt to get the parties to agree upon Local 420's field staff, the I.E.B. issued the Resolution which is the subject of this action.[3]

The Resolution directs that Local 420 select its own field staff which would be independent of D.C. 37's supervision and control. To effectuate this purpose, the Resolution also empowers Local 420 to finance its staff with dues formerly paid to D.C. 37. Specifically, the Resolution provides for Local 420 to receive its dues directly[4] and to retain a portion of the per

---

1. D.C. 37 is a duly chartered subordinate body of AFSCME.

2. Members of Local 420 have brought an action, which is pending in New York State Supreme Court, to compel Butler to account for the funds entrusted to him. *Woodley v. Butler*, 101 Misc.2d 679, 421 N.Y.S.2d 797.

3. The Local 420 Board also brought an action in New York Supreme Court to remove eight D.C. 37 Staff Representatives who were also members of Local 420, and who were serving the Local without the consent of the Local 420 Board. This relief was granted on June 19, 1979, pursuant to a provision of the D.C. 37 Constitution which states that Staff Representatives "shall be employed in the jurisdiction of

*their* local only with the concurrence of their local union executive board." D.C. 37 Const. art. IX, § 2(e) (emphasis supplied). D.C. 37 has since filled those positions with persons who are not members of Local 420. Pending the outcome of this litigation, D.C. 37 intends to continue to supply the full range of field staff services to members of Local 420.

4. This aspect of the Resolution would alter the present practice, in existence for several years, under which D.C. 37 receives its check-off dues from the employer, deducts its per capita tax, and then forwards the balance to AFSCME and Local 420.

capita taxes which are payable to D.C. 37 under the AFSCME and D.C. 37 constitutions.

The question presented is whether the I.E.B. exceeded its authority in adopting the October 1979 Resolution to resolve the Local 420-D.C. 37 dispute.[5] Local 420 claims that the I.E.B. acted pursuant to its general powers under the AFSCME Constitution to govern the Union and to determine all matters with regard to the affiliation, chartering, and jurisdiction of subordinate bodies. The intervenor also relies on provisions of the AFSCME Constitution which vest the I.E.B. with the authority to adjust per capita taxes and to determine whether a council is entitled to such taxes. D.C. 37 contends that the I.E.B. Resolution violates the AFSCME Constitution because it purports to fundamentally alter the well-defined duties and responsibilities of AFSCME, D.C. 37, and Local 420 under their respective constitutions. Fundamental changes of this nature, according to D.C. 37, may be accomplished only by a constitutional amendment duly passed by the union membership.[6] Moreover, D.C. 37 points out that the AFSCME Constitution provides alternative means of resolving the dispute in this case which the I.E.B. did not pursue.[7]

A careful review of the applicable sections of the union constitution lends support to plaintiffs' position that the I.E.B. Resolution is unenforceable. The intervenor has not demonstrated that the AFSCME Constitution vests the I.E.B. with the authority to fundamentally change the ongoing relationship of a council and its affiliated local. Short of permitting a local to completely sever its affiliation with a particular council, which the I.E.B. *is* empowered to do, AFSCME Const. art. IX, § 19; art. V, § 6; art. IX, § 1,[8] the I.E.B. does not appear to be authorized to restructure the existing relationship between a local union and its district council. Thus, as the "highest legislative and policy making body" of AFSCME, art. VII, § 1, the I.E.B. clearly had the power to decide, for example, whether Local 420 should be affiliated with D.C. 37. Art. IX, § 19; art. V, § 6; art. IX, § 1.[9] In this case, however, while permitting the continued affiliation of Local 420 and D.C. 37, the I.E.B. has attempted to interfere with the Council's ability to service its local directly. This form of partial affiliation is on its face inconsistent with the AFSCME Constitution which mandates that a local must either affiliate with a council and pay per capita taxes or be independent of any council. Art. IX, § 19.[10]

5. The political maneuverings underlying this legal battle relate to Jerry Wurf's bid for re-election as International President in June 1980. Gotbaum, though not a formal opposition candidate, has been an outspoken critic of Wurf's policies. The Butler-D.C. 37 dispute has become a focal point of conflict between the two leaders; each claims that the other is using the Butler controversy for selfish political ends.

6. The AFSCME Constitution may be amended only by a two-thirds vote of a duly constituted "Convention" or by majority vote of the Convention, if certain specified conditions are met. AFSCME Const. art. XIV.

7. For example, any member of the I.E.B., including Wurf, could have filed intraunion charges against D.C. 37 officials or Staff Representatives for improper activities with respect to Local 420. AFSCME Const. art. X. In addition, Wurf, as President of AFSCME, could have (a) referred the Butler-D.C. 37 dispute to the neutral AFSCME Judicial Panel for hearing and/or investigation pursuant to art. IX, § 29 of the AFSCME Constitution, or (b) imposed a trusteeship on D.C. 37 for the limited purpose of resolving the specific grievances of Butler against the Council pursuant to art. IX, § 28 of the AFSCME Constitution.

8. Hereafter, all references to constitutional provisions are to the AFSCME Constitution, unless otherwise indicated.

9. The I.E.B. may also approve the constitutions of subordinate bodies and all amendments thereto. Art. IX, § 40. The power to *amend* the AFSCME Constitution, however, is expressly excepted from any grant of authority to the I.E.B. Art. IX, § 1.

10. The monies received from the affiliated locals are not necessarily earmarked to provide services for the local from which the per capita taxes were received. Rather, the money is budgeted to "service categories," and these services are provided to the affiliated locals depending on their needs at any given time. Thus, it undermines the entire intraunion structure to permit one local to finance its own staff with the per capita taxes owed to its affiliated council.

Local 420 also relies on the following more narrowly drawn provisions of the AFSCME Constitution as specific authority for the Resolution: art. IX, §§ 5, 6, 19, 41; art. X, § 2.C. These sections do not appear to support the constitutionality of the I.E.B. Resolution.

*Article IX, Sec. 6*

Under special circumstances, which shall be clearly described in the request, the International Executive Board or the International President, subject to the approval of the International Executive Board, may, at the request of a subordinate body, approve for limited and specifically defined periods of time the establishment of a different dues or per capita rate for a subordinate body, except that in no case may the International Union per capita tax rate be diminished. . . .

This section, entitled "Adjustment of Dues Rate," empowers the I.E.B. to approve for a limited period of time a different dues or per capita rate for a subordinate body. Read in context, it appears to relate only to the narrow area of increases or decreases of prescribed AFSCME dues and per capita taxes. It does not expressly authorize a local to retain portions of council per capita taxes for its own use.[11]

*Article IX, Sec. 5*

The minimum dues of any local . . . shall be not less than eight dollars per month . . . . In the case of any local which is not affiliated only with an AFSCME Council which does not have as a primary purpose the providing of staff assistance for organizing, servicing and negotiations at the local union level, the allocation shall be as follows: five dollars and ten cents to the local, and two dollars and ninety cents as per capita tax to the International Union.

This section merely provides for a lower minimum dues rate from locals not affiliated with a council or affiliated with a council which does not provide local staff assistance as its primary purpose. The D.C. 37 Constitution, art. II, § 1, e, expressly provides that one of its primary objectives is to offer its affiliated unions staff assistance at the local level for "organization, representation, research and education, as well as legal and accounting services and the necessary technical facilities." It would be absurd to hold that art. IX, sec. 5 empowers the I.E.B. to unilaterally order D.C. 37 to violate its constitution by withdrawing its field staff from Local 420, and then order D.C. 37 to turn over dues payments to the Local on the theory that the District Council is not providing the terminated services.

*Article IX, Sec. 41*

The constitution of every subordinate body of the Federation shall contain a provision stating the following:

Except to the extent specified in this constitution, no officer of the local union (or council or Retired Employee Chapter) shall have the power to act as agent for or otherwise bind the local union (or council or Retired Employee Chapter) in any way whatsoever. No member or group of members or other person or persons shall have the power to act on behalf of or otherwise bind the local union (or council or Retired Employee Chapter) except to the extent authorized in writing by the president of the local union (or council or Retired Employee Chapter) or by the executive board of the local union (or council or Retired Employee Chapter).

This section deals with the local union's power to appoint its own agents to act on its behalf or otherwise bind the local union. Council staff representatives are not agents of the local unions they service. Thus, this section does not authorize a local union to unilaterally discharge its affiliated council's field staff.

---

11. Gotbaum described the legislative history of art. IX, § 6 in his affidavit as follows:

This provision of the Constitution was passed at a special convention of the International held in 1965—and I was there. It was passed as part of a package which raised the per capita taxes due to the *International* and was specifically presented to the Convention as a method by which the impact of the new increased per capita tax due to the International could be temporarily eased for those councils and locals which needed time to increase their own dues correspondingly.

*Article IX, Sec. 19*

. . . The appropriate fiscal officer of each local union shall at the end of each month, remit to the appropriate council financial officer the constitutionally established amounts required for the payment of per capita tax to the Council with which the local is affiliated.

Local 420 relies on this section for the limited purpose of legitimizing only that part of the Resolution (Paragraph "C") which directs that Local 420 receive its own dues. Local 420 argues that this provision mandates that local unions receive their dues directly from the employer and then turn over the constitutionally prescribed per capita taxes to the appropriate council. This order of payment differs from the procedure currently followed in New York City for D.C. 37 and many of its affiliated locals. For the past several years, Local 420's dues have been paid by the New York City Health and Hospitals Corporation and forwarded to an Employee Organization Check-Off Committee for processing. The committee sends Local 420's dues to D.C. 37 which then deducts its per capita taxes and turns the balance of the monies over to Local 420. *See* note 4, *supra.* Local 420 contends that since the current procedure for the payment of its dues is inconsistent with the terms of art. IX, § 19, the I.E.B. had the authority to direct that it be changed.

This argument is unpersuasive for two reasons. First, art. IX, § 19 does not expressly provide for any specific manner of payment of dues. On its face, it merely establishes a requirement that each local union pay monthly per capita taxes to its affiliated council. The absence of any specific requirement as to the order of payment probably reflects an intent to give the employers and unions considerable flexibility in establishing convenient and efficient payment procedures. Second, the crux of the I.E.B. Resolution is not the provision as to the order of dues payments, but the direction that Local 420 withhold D.C. 37's per capita taxes to finance an independently selected field staff. Even if art. IX, § 19

authorized the I.E.B. to unilaterally alter the order of payment of dues, this court is not convinced that it would permit the I.E.B. to direct that D.C. 37 be deprived of those dues.

*Article X, Sec. 2.C*

The following and no other shall constitute the basis for the filing of charges [by any member of AFSCME against any individual for actions taken while a member of AFSCME or while a staff employee of AFSCME or a subordinate body]:

\*     \*     \*     \*     \*     \*

C. Any action by an officer or employee of a Council which results in the expenditure by said Council of money which is the property of any other subordinate body . . . without prior written authorization from the body which is the owner of such funds [is an offense of the Constitution].

Under this provision, charges may be filed against a council officer or employee for the unauthorized expenditure of an affiliated local union's funds. Local 420 claims that D.C. 37's use of the Local's dues to pay D.C. 37 Staff Representatives is unauthorized because the I.E.B. has removed that staff and withheld its dues from D.C. 37 by issuance of the October 16, 1979 Resolution. This argument, however, presupposes that the Resolution conforms to the provisions of the AFSCME and D.C. Constitutions. Since Local 420 has failed to establish this premise, no claim can be made that D.C. 37's financing of its field staff with Local 420's constitutionally prescribed per capita taxes is unauthorized. In fact, the AFSCME and D.C. 37 Constitutions mandate that the per capita taxes be paid to D.C. 37 by Local 420.

In any event, art. X, § 2, C merely establishes grounds upon which one member of AFSCME may file charges against another member. Since no such charges have been filed with respect to this dispute, the section has no direct applicability to the issues presented here.

█ In sum, the intervenor has failed to cite a single provision of the AFSCME Constitution which either expressly or im-

**1026**

pliedly authorizes the I.E.B. to promulgate and enforce the Resolution at issue here. Nevertheless, Local 420 contends that this court should not interfere with the International's own interpretation of its constitution. It is well established that in reviewing the administration of union affairs, courts must be careful not to substitute their judgment for that of union officials with greater expertise in the field. *Gurton v. Arons*, 339 F.2d 371 (2d Cir. 1964). Thus, courts have consistently refused to disturb union decisions based on a reasonable or non-arbitrary interpretation of the union's constitution. *Vestal v. Hoffa*, 451 F.2d 706, 709 (6th Cir. 1971), *cert. denied*, 406 U.S. 934, 92 S.Ct. 1768, 32 L.Ed.2d 135 (1972); *Musicians' Pro. U. Loc. No. 274 v. American Fed. of Musicians*, 329 F.Supp. 1226, 1236 (E.D.Pa.1971); *Stelling v. IBEW*, 587 F.2d 1379, 1389 (9th Cir. 1978). The union's power to "interpret" its own rules, however, cannot be used to circumvent the established procedures for duly amending those rules. *Colorado Labor Council, AFL–CIO v. American Federation of Labor and Congress of Industrial Organizations*, 349 F.Supp. 37 (D.Colo.1972), *vacated on other grounds*, 481 F.2d 396 (10th Cir. 1973). In this case, the I.E.B.'s Resolution is based on an "interpretation" of the AFSCME Constitution which fundamentally alters the constitutionally fixed relationship between Local 420 and D.C. 37. Thus, the Resolution could reasonably be viewed as an attempt by the I.E.B. to unlawfully "amend" the AFSCME Constitution.

There is no basis, on this record, for the issuance of a preliminary injunction to enforce the I.E.B. Resolution. The intervenor has failed to establish that it is likely to succeed on the merits, or that there are sufficiently serious questions going to the merits to make them a fair ground for litigation. *See Sonesta International Hotels Corporation v. Wellington Associates*, 483 F.2d 247, 250 (2d Cir. 1973). Accordingly, the intervenor's motion is denied.