Franklin LEARY, Plaintiff,

v.

The WESTERN UNION TELEGRAPH COMPANY, et al., Defendants.

No. 81 Civ. 0946 (IBC).

United States District Court,
S.D. New York.

Sept. 16, 1983.

Hall, Clifton & Schwartz, New York City, for plaintiff Daniel E. Clifton, New York City, of counsel.

Thomas L. Morrissey, Ernest Walton, New York City, for defendant Western Union Telegraph Co.; Laurence Reich, New York City, of counsel.

Ann F. Hoffman, New York City, for defendant unions; Ann F. Hoffman, Thomas S. Adair, Adair & Goldthwaite, P.C., Atlanta, Ga., of counsel.

## OPINION

IRVING BEN COOPER, District Judge.

Plaintiff seeks an order, pursuant to Rule 56 of the Federal Rules of Civil Procedure, granting summary judgment as to the First, Second, Third, Fourth and Fifth causes of action in the complaint. Each of the named defendants has cross-moved, pursuant to the same Rule 56, for summary judgment dismissing the complaint herein.

Subject matter jurisdiction is founded upon Section 502 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. 1132, authorizing a civil action by a participant of an "employee pension benefit plan" or "pension plan" to obtain appropriate relief for violations of the Act.

The complaint and amended complaint, filed February 18, 1981 and September 23, 1981 respectively, allege violations of Section 13(d)(4) of the Collective Bargaining Agreement, Article XVII, Section 6, of the Communications Workers of America's Constitution, Section 204(g) of ERISA, 29 U.S.C. § 1054(g), and Section 101(a)(1) of the Labor-Management Reporting and Disclosure Act of 1959.

The material facts of the case are not in dispute. Leary was employed by Western Union from January 21, 1957 until January 2, 1980. In April of 1966, when Communications Workers of America was certified as a bargaining representative at Western Union, Leary became a member of Local 1177. Pursuant to the Collective Bargaining Agreement between Western Union and Communications Workers of America, the Company may reduce the force at a location for any lawful reason and in any class of work. In December of 1979, Leary was notified by Western Union that he was subject to its plan to reduce its work force. Under Section 13(d) of the Collective Bar-

gaining Agreement, as in effect prior to July 28, 1976, employees subject to force reduction were given four choices, within a specified notice period:

1. pension, if eligible
2. acceptance of force reduction furlough as provided herein below
3. the right to bump the junior employee in the same, equal or lower class of work in any department as provided herein below.
4. acceptance of involuntary furlough with severance pay in accordance with the following schedule and subject to the conditions set forth herein below.

In addition, the Company maintained a Pension Plan, adopted under the Collective Bargaining Agreement, "providing pension benefits upon normal, early or disability retirement to employees meeting the age, service and disability requirements for such pensions. The Pension Plan provided for a 'deferred vested pension' payable to any plan participant having a term of employment of ten years or more (or five years or more, if the participant were [sic] at least forty years of age), payment of such benefit being deferred to commence at a later date. Under this Plan, prior to January 1, 1976, an employee who selected severance pay under the Collective Bargaining Agreement would take such severance pay in lieu of his deferred vested pension."[1]

On January 1, 1976 ERISA, 29 U.S.C. 1001 et seq., became effective and accordingly The Western Union Telegraph Company ("Company"), the Communications Workers of America, AFL–CIO, and Local 1177 of Communications Workers of America, AFL–CIO ("Union") negotiated "complementary changes in Section 13 of the Collective Bargaining Agreement and the Pension Plan. A new optional form of benefit was devised consisting of a lump-sum distribution of the present value of the periodic pension provided under the Pension

---

1. *See* Defendant Company's Memorandum in Support, p. 2.

Plan."[2] Simultaneously, the fourth severance-pay option in Section 13(d) of the Collective Bargaining Agreement was modified by adding the following proviso:

> provided, however, that the amount of severance pay, in the case of an employee eligible to retire on a pension or entitled to a vested deferred retirement benefit at the time of his termination of service, shall consist of a lump sum of equivalent actuarial value to the employee's pension or benefit in accordance with Option 6 of Section 13 of the EBF Plan plus additional severance pay computed by offsetting such lump sum against the amount of severance pay provided in accordance with the following schedule.

"Thus, under Section 13(d)(4) of the Collective Bargaining Agreement, an employee electing to receive severance pay would have his severance pay reduced by the lump sum value of the pension or vested deferred retirement benefits to which the employee was then entitled, which sum would then be paid to him under the terms of the Pension Plan. Therefore, an employee entitled to severance pay under Section 13(d)(4) of the Collective Bargaining Agreement and also to pension or vested deferred retirement benefits under the Pension Plan could receive, after January 1, 1976, as before, the greater of the two benefits. Pursuant to the modification, the portion of the severance pay that represented the employee's pension or vested deferred retirement benefit entitlement would be paid under the Pension Plan, with the remainder of the employee's entitlement being paid under the severance pay provision of the Collective Bargaining Agreement, rather than the entire amount being paid under the severance pay provisions of the Collective Bargaining Agreement, as was the case prior to January 1, 1976."[3]

Section 13(d)(4), as so amended, was included in the present Collective Bargaining Agreement, which became effective July 28, 1979 and expired July 2, 1982. It therefore was in effect on January 2, 1980, when plaintiff's employment with the Company was terminated.

"Under the provisions of the Pension Plan, plaintiff was entitled on January 2, 1980 to deferred vested retirement benefits having a value then of $8,928. Upon then electing to accept a furlough reduction termination of employment under Section 13 of the Collective Bargaining Agreement, plaintiff's severance pay entitlement under the schedule set forth therein then amounted to $25,370.40. Section 13(d)(4) of the Collective Bargaining Agreement, as in effect on January 2, 1980, then entitled plaintiff to severance pay consisting of (1) a lump sum of $8,928.64 under Option 6 of the Pension Plan and (2) additional severance pay equal to the difference between that sum and $25,270.40."[4]

The sum of $16,441.76 was offered to plaintiff pursuant to Section 13(d)(4) which plaintiff subsequently declined, claiming that he was entitled to the sum of the scheduled severance pay plus his deferred vested retirement benefit under the Pension Plan.

The first issue we must address is whether or not Section 13(d)(4) of the Collective Bargaining Agreement was validly and effectively agreed to by the Union without the need for formal ratification by the membership. Contrary to plaintiff's contention, we see no need for formal ratification by the Union membership in view of the fact that its constitution does not require it. Article XVII, Section 6 of the Communications Workers of America Constitution states as follows:

> "Any contract entered into through collective bargaining or otherwise dealing with wages, hours, terms of employment or other conditions of employment shall be subject to ratification by secret ballot of the members affected if the delegates

---

**2.** *See* Defendant Company's Memorandum in Support, p. 3.

**3.** *See* Defendant Company's Memorandum in Support, pp. 3–4.

**4.** *See* Defendant Company's Memorandum in Support, p. 4.

to a National Convention representing such members themselves determine ratification to be desirable."

It is clear from the facts as submitted that the 1976 modification negotiated by the Company and the Union, with respect to Section 13(d)(4) of the Collective Bargaining Agreement, was required in order to comply with ERISA of 1974. Further, there was no "reduction in accrued benefit" to plaintiff by reason of the 1976 amendments. Plaintiff has failed to establish that mid-year modifications to the Collective Bargaining Agreement require ratification or that the Union violated Section 6 of the Communications Workers of America Constitution by such modification. This Court will not substitute its judgment regarding the interpretation of a union's constitution for that of the officials entrusted under that constitution to interpret it, so long as their interpretation is "fair or reasonable." *Vestal v. Hoffa,* 451 F.2d 706 (6th Cir.1971), cert. denied, 406 U.S. 934, 92 S.Ct. 1768, 32 L.Ed.2d 135 (1972).

■ Although plaintiff admits that Local 1177 members had an opportunity to vote, by secret ballot, on both the 1976–1979 and 1979–1982 contracts, he contends that the failure to submit the modification to ratification violated Section 101(a)(1) of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 411(a)(1). That Section provides:

> "Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meeting, subject to reasonable rules and regulations in such organization's constitution and bylaws."

Such a provision, however, does not require a modification of the Collective Bargaining Agreement to be submitted to the membership for ratification.

Under Section 9(a) of the National Labor Relations Act (NLRA) 29 U.S.C. § 159(a), a duly certified bargaining representative is "the exclusive representative of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment or other conditions of employment." The duty imposed on an employer by NLRA Sections 9(a) and 8(a)(5) creates a corresponding right in the employer to rely on union representatives in the negotiation of collective bargaining agreements and amendments thereto. *American Postal Workers Union, Local 6885 v. American Postal Workers Union,* 665 F.2d 1096, 1108–09 (D.C.Cir.1981); *Baker v. Newspaper & Graphic Communications Union,* 628 F.2d 156, 159–60 (D.C.Cir. 1980).

■ Plaintiff's argument fails to persuade us that the Union violated the duty of fair representation with respect to any changes made in Section 13(d)(4) of the Collective Bargaining Agreement. As the Supreme Court recognized in *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953):

> Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of discretion.

The Court then explained in *Vaca v. Sipes,* 386 U.S. 171, 176, 190, 87 S.Ct. 903, 909–16, 17 L.Ed.2d 842 (1967), that the duty of fair representation, which is implicit in a union's authority to serve as the exclusive representative of a unit, *see* NLRA § 9(a), 29 U.S.C. § 159(a) (1976), is violated only when the union's conduct toward one of its members is arbitrary, discriminatory or in bad faith.

■ With respect to the severance pay provision of the Collective Bargaining Agreement and its application to Section

204(g) of the Employee Retirement Income Security Act of 1974, Western Union's attempt to reduce the payment owed to plaintiff in accordance with its Pension Plan does not constitute a violation of 29 U.S.C. § 1054(g). Our Court has previously held, and the Second Circuit agreed, that a severance pay plan markedly similar in structure and intent to the severance pay plan of the Collective Bargaining Agreement between the Company and the Union, under which a terminated employee's pension plan entitlement was netted against his severance pay entitlement to determine the amount of severance pay actually paid to him, does not violate Section 203 of ERISA, 29 U.S.C. § 1053. *Spitzler v. New York Post Corp.,* 476 F.Supp. 386, 390–91 (S.D.N.Y.1979), *aff'd,* 620 F.2d 19 (2d Cir.1980). As to this very issue, it should be noted that the 1976 amendments to the Collective Bargaining Agreement do not change the maximum amount of the "accrued benefit" to which an employee is entitled both to severance pay benefits and pension benefits under the Pension Plan. The only change concerns the source of payment of such benefit.

After carefully reading the severance plan as set forth in the Collective Bargaining Agreement and evaluating the same with Section 3(2) of ERISA, 29 U.S.C. § 1002(2), we believe that such a plan is, without question, a severance plan and not, as plaintiff insists, a pension plan. These same severance payments chosen by plaintiff, pursuant to Section 13(d)(4) of the Collective Bargaining Agreement, are not required by law; they are purely contractual in nature. Furthermore, unlike a pension plan, the severance pay plan is not contingent, directly or indirectly, upon retirement. The forfeiture provision, Section 203 of ERISA, 29 U.S.C. § 1053, applies by its terms only to a "pension plan."

For these reasons, plaintiff's motion for summary judgment is denied in all respects. Summary judgment is granted the defendants dismissing the asserted claim, pursuant to Fed.R.Civ.P. 56.

SO ORDERED.