**Danny FELTON and Melvin Waddy, Plaintiffs,**

**v.**

**Arthur ULLMAN, individually and as Acting President of New York Letter Carriers, Branch 36, National Association of Letter Carriers; Joseph S. Giordano; New York Letter Carriers Branch 36, National Association of Letter Carriers; Vincent J. Sombrotto; and the National Association of Letter Carriers of the United States of America, Defendants.**

**No. 85 Civ. 8974 (WCC).**

United States District Court, S.D. New York.

Jan. 27, 1986.

Mordkofsky & Goldstein, P.C., Bronx, N.Y., for plaintiffs; (Norman J. Mordkofsky, of counsel).

Cohen Weiss and Simon, New York City, for defendants; (Keith E. Secular, Richard M. Seltzer, of counsel).

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

Plaintiffs Danny Felton ("Felton") and Melvin Waddy brought this action under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) (1982). They seek a declaratory judgment that Felton is the President of New York Letter Carriers Branch 36 ("Branch 36"), an injunction enjoining defendant Arthur Ullman from holding the office of President of Branch 36, and an injunction enjoining Branch 36 from holding any further election of officers until Felton has been declared President of Branch 36.

This matter is now before the Court on the parties' cross-motions for summary judgment on a statement of agreed facts. For the reasons stated below, defendants' motion for summary judgment is granted, and plaintiffs' motion is denied.

### Background

In order to render the issues before the Court understandable, it is necessary to set forth some of the background of this case. Branch 36 is a labor organization and collective bargaining agent for some 9,000 letter carriers in Manhattan and the Bronx. Statement of Agreed Facts ¶ 4 [hereinafter cited as "SAF"]. It is a local unit of the National Association of Letter Carriers ("NALC"), which represents approximately 200,000 mail delivery employees. *Id.*

In October 1985, Joseph S. Giordano ("Giordano") resigned as President of Branch 36, and pursuant to article II, section 3 of the Branch 36 By-Laws, Executive Vice President Arthur Ullman was installed as Giordano's successor. *Id.* ¶ 2. Article II, section 3 provides:

> In the event of death, resignation, impeachment or disability of the President, the line of succession shall be as follows: Executive Vice President; Vice President; Recording Secretary; Financial Secretary-Treasurer.

Joint Exh. A at 1; SAF ¶ 6.

Plaintiff Danny Felton is the Vice President of Branch 36, and thus, under article II, section 3, he was second in the line of succession when Giordano resigned. He contends, however, that he should have been first in the line of succession because the provisions of article II, section 3 are inconsistent with the NALC Constitution. Article XV of the NALC Constitution expressly states that Branches may not adopt by-laws that are inconsistent with the NALC Constitution:

> Each Branch or State Association may make, alter, or rescind such by-laws, rules, and regulations from time to time as may be deemed most expedient, *providing they do not in any way conflict with this Constitution.*

Joint Exh. B at 52; SAF ¶ 10 (emphasis added).

Felton argues that the line of succession set out in article II, section 3 is inconsistent with the NALC Constitution because the NALC Constitution does not recognize an office of Executive Vice President. In support of his argument, Felton points to the NALC Constitution for the Government of Subordinate and Federal Branches. Article IV, section 1 of that document provides:

> The offices of the Branch shall be a President, Vice-President, Recording Secretary, Treasurer, Sergeant-at-Arms, a Health Benefits Representative, and a Board of Trustees composed of either three or five members.

Joint Exh. B at 69–70; SAF ¶ 11. As can be seen, the NALC Constitution for the Government of Subordinate and Federal Branches indeed does not provide for an office of Executive Vice President.

Moreover, although Felton has not raised this point, article II, section 3 is inconsistent with the NALC Constitution for the Government of Subordinate and Federal Branches in a more direct way. Article IV, section 2 of that constitution provides in part:

> With the exception of the office of the President, which is expressly provided for in Article VI, Section 2, herein, Branches may make provision in their By-Laws for succession to the offices of all other officers in the event of death, resignation, disqualification, refusal or neglect of such officers to discharge the duties of their office.

Joint Exh. B at 70 (emphasis added). Article VI, section 2 provides:

> The *Vice President* shall preside in the absence of the President, and in case of death, resignation, disqualification, refusal or neglect of the President to discharge the duties of his/her office, the *Vice President* shall then perform all duties incumbent upon the President for the remainder of the term of office.

Joint Exh. B at 74 (emphasis added). Thus, the provisions of the NALC Constitution for the Government of Subordinate and Federal Branches clearly indicate that upon the resignation of a Branch President, the Branch Vice President is the proper successor to that office. On their face, the provisions of the NALC Constitution and the Branch 36 By-Laws appear to be inconsistent.

These provisions have, however, been the subject of past interpretation. Article IX, section 1(j) of the NALC Constitution provides that the NALC President may make decisions on questions of law; it further provides that the President's decisions "shall be final between Conventions." Joint Exh. B at 31; *see also* SAF ¶ 12. The President's rulings are reported to the Convention for approval or rejection, and, when approved, "have the force and effect of

General Laws of the Union." Joint Exh. B at 31; *see also* SAF ¶ 12.

In a letter dated October 23, 1979, NALC President Vincent J. Sombrotto ruled that

[n]othing in the NALC Constitution prohibits Branches from establishing officer positions other than those specifically set forth in Article IV of the Constitution for the Government of Subordinate and Federal Branches. Such additional positions now reflect the established practice in the NALC. Accordingly, it is my decision that a Branch may provide for officer positions in addition to those listed in Article IV.

Joint Exh. C at 1; *see also* SAF ¶ 13. Sombrotto's ruling was duly reported to and confirmed by the 1980 Atlanta Convention of the NALC, and thus pursuant to article IX, section 1(j) of the NALC Constitution, it now has "the force and effect of General Laws of the Union." SAF ¶ 13.

In a letter to plaintiff Felton dated November 19, 1985, Sombrotto issued a decision on the issue presented here. He ruled that "a Branch may provide in its By-Laws that the Executive Vice President of the Branch shall fill a vacant presidency, and that such a provision is not in conflict with the NALC Constitution." Joint Exh. D at 2.

Sombrotto listed several bases for his ruling. First, he noted that his previous ruling that a Branch may provide for officers in addition to those listed in article IV of the Constitution for the Government of Subordinate and Federal Branches had been approved by the Atlanta Convention and thus had the effect of the general laws of the union. Second, he indicated that the Branch 36 By-Laws have provided for the succession of the Executive Vice President to a vacant presidency for over 25 years, and that at least two Branch 36 Executive Vice Presidents had assumed a vacant presidency pursuant to that provision. Third,

he stated that in recent years the Committee of Laws of the NALC had routinely approved by-law amendments providing that Branch Executive Vice Presidents assume a vacant presidency position. Finally, he indicated that this practice was consistent with the NALC Constitution, article IX, section 2(a), which provides that the NALC Executive Vice President shall assume the office of National President if that office becomes vacant. *Id.* at 1–2.

Sombrotto's ruling of November 19, 1985 apparently has not been approved or rejected by a national convention, and accordingly, does not have the effect of union law. However, pursuant to article IX, section 1(j) of the NALC Constitution, Sombrotto's decision is final, and plaintiffs have no recourse to further appellate review within the union itself. Accordingly, they seek a declaratory judgment from this Court that article II, section 3 of the Branch 36 By-Laws is contrary to the provisions of the NALC Constitution, and that Felton is the rightful successor to the Branch 36 presidency.[1]

*Discussion*

It is well settled that the Court's function in a matter such as this is a limited one. The Court of Appeals for the Second Circuit has repeatedly warned lower courts that they must not "intervene at will" in the internal affairs of unions:

Courts have no special expertise in the operation of unions which would justify a broad power to interfere. The internal operations of unions are to be left to the officials chosen by the members to manage those operations except in the very limited instances expressly provided by the Act. The conviction of some judges that they are better able to administer a union's affairs than the elected officials is wholly without foundation. Most unions are honestly and efficiently administered and are much more likely to continue to be so if they are free from

---

1. In the second cause of action of their complaint, plaintiffs alleged that defendants failed to comply with the procedures set out in article X, section 3 of the Branch 36 By-Laws for handling charges made against the Branch President. Plaintiffs have apparently abandoned any attempt to gain relief under this second cause of action since they have not raised this claim in their brief or in the statement of agreed facts.

officious intermeddling by the courts. General supervision of unions by the courts would not contribute to the betterment of the unions or their members or to the cause of labor-management relations.

*Gurton v. Arons,* 339 F.2d 371, 375 (2d Cir.1964); *accord Sheldon v. O'Callaghan,* 497 F.2d 1276, 1281 (2d Cir.), *cert. denied,* 419 U.S. 1090, 95 S.Ct. 681, 42 L.Ed.2d 682 (1974).

■ Accordingly, a court "should be exceedingly reluctant to substitute its judgment for that of union officials in the interpretation of the union's constitution, and should interfere only where the official interpretation is unfair or unreasonable." *Schonfeld v. Raftery,* 359 F.Supp. 380, 388 (S.D.N.Y.1973), *aff'd sub nom. Frisch v. District Council No. 9, Bhd. of Painters,* 493 F.2d 1061 (2d Cir.1974); *see also Drywall Tapers & Painters v. Operative Plasterers' and Cement Masons' Int'l Ass'n,* 601 F.2d 675, 679 (2d Cir.1979), *cert. denied,* 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980); *Leary v. Western Union Tel. Co.,* 570 F.Supp. 1384, 1387 (S.D.N.Y.1983); *Local 644 Int'l Photographers of the Motion Picture Indus. v. International Alliance of Theatrical Stage Employes,* 563 F.Supp. 1334, 1339 (S.D.N.Y.1983).

■ Indeed, a court should defer to a union official's reasonable interpretation of his union's constitution even if the court might not have reached the same interpretation. *See Rosario v. Dolgen,* 441 F.Supp. 657, 674 (S.D.N.Y.1977), *aff'd in part and rev'd in part on other grounds sub nom. Rosario v. Amalgamated Ladies' Garment Cutters' Union,* 605 F.2d 1228 (2d Cir.1979), *cert. denied,* 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980). Moreover, a court should defer to a reasonable interpretation even if the court finds the provisions in question are "ambiguous," for the proper judicial inquiry is " 'whether

there was arguable authority for the officer's act from the officer's viewpoint at the time, not from a court's more sophisicated hindsight.' " *Stelling v. International Bhd. of Elec. Workers,* 587 F.2d 1379, 1389 & n. 10 (9th Cir.1978), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2890, 61 L.Ed.2d 315 (1979) (quoting Leslie, *Federal Courts and Union Fiduciaries,* 76 Colum.L.Rev. 1314, 1319 (1976) ).

■ Bearing these principles in mind, I have carefully considered Sombrotto's ruling that the line of succession set out in the Branch 36 By-Laws does not impermissibly conflict with the NALC Constitution, and have concluded that it is neither unreasonable nor unfair. I therefore decline to disturb it.

There is no doubt, as I pointed out above, that there is some inconsistency between the literal terms of article II, section 3 of the Branch 36 By-Laws and article VI, section 2 of the NALC Constitution for the Government of Subordinate and Federal Branches. The Branch 36 By-Law provides for the Branch Executive Vice President to succeed to the presidency, while the NALC Constitution expressly provides for the Branch Vice President to do so. Yet, notwithstanding that inconsistency, I cannot say that it was unreasonable for Sombrotto to conclude that the Branch 36 By-Law does not violate the NALC Constitution.

In particular, I find persuasive the four bases Sombrotto himself offered for his ruling. First, he stated that it is now established law of the NALC that Branches may create an office of Executive Vice President. The very title of that office suggests that it is higher than the office of Vice President, and therefore it was not unreasonable to conclude that the Executive Vice President should stand before the Vice President in the line of succession to the presidency.[2]

2. Plaintiffs do not deny that Branches may create an office of Executive Vice President, but contend that the Branch 36 By-Law providing for the office of Executive Vice President was never formally ratified. *See* Affidavit of Danny Felton dated January 16, 1986, ¶¶ 2–7. That contention is refuted by the Affidavit of Arthur Ullman dated January 9, 1986 and the Affidavit of George Davis, Jr. dated January 6, 1986. Plaintiffs' position is also inconsistent with SAF ¶ 7.

Second, Sombrotto noted that the Branch 36 By-Laws have provided for the Executive Vice President to succeed to the presidency for over 25 years, and that two Branch 36 Executive Vice Presidents have in fact assumed a vacant presidency pursuant to that provision. This long-standing and accepted practice of the union is a compelling reason to adopt the interpretation offered by Sombrotto, especially when one considers that the members of Branch 36 presumably voted to elect Arthur Ullman to the position of Executive Vice President on the understanding that he would succeed to the presidency if it became vacant. It was appropriate for Sombrotto to interpret the NALC Constitution in a manner that would uphold the expectations of its members.

Third, Sombrotto noted that in recent years the Committee of Laws has routinely approved by-law amendments providing that Branch Executive Vice Presidents assume a vacant presidency position. In fact, the by-laws of three other local units of the NALC in the metropolitan New York area provide for an Executive Vice President and for the Executive Vice President to succeed to the office of President when a vacancy occurs. SAF ¶ 15. In 1978, the Executive Vice President of Branch 6000 (covering Nassau and Suffolk Counties) became President of that unit when there was a vacancy. *Id.*

Finally, Sombrotto indicated that the practice of a Branch Executive Vice President succeeding to a vacant Branch presidency was consistent with that section of the NALC Constitution that provides for the NALC Executive Vice President to succeed to the NALC presidency if that office becomes vacant. It was appropriate for Sombrotto to construe parallel provisions in a similar fashion.

Felton argues, however, that Sombrotto's decision is inconsistent with his past decisions on other matters. *See* Joint Exhs. E to U. I have reviewed these past decisions, and see no conflict between them and Sombrotto's ruling on the issue before the Court.

Felton also argues that Sombrotto's decision is unfair, and suggests that it was intended to discriminate against him. Felton avers that he is the first and only Black to ever serve as a full-time officer of Branch 36. Affidavit of Danny Felton dated January 10, 1986, ¶ 2. He alleges that "[t]hroughout the entirety of my tenure as a member and officer of Branch 36 of the NALC, I have witnessed the defendants engage in various patterns of conduct intended solely to discriminate against me and to perpetuate a system of union control which operates to maintain the current leadership and exclude me as a challenger and potential Branch 36 President." *Id.*

However, beyond this conclusory statement, Felton offers no basis for his claim that Sombrotto's ruling was intended to discriminate against him or other Black union members. As on any motion for summary judgment, plaintiffs here cannot rely merely on conclusory allegations. *See, e.g.,* Rule 56(e), Fed.R.Civ.P.; *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 444 (2d Cir.1980). Instead, plaintiffs must come forward with specific facts supporting their position. *See Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986). Felton has not done so with respect to this contention.

Accordingly, I conclude that there is no reason for the Court to disturb Sombrotto's decision. Defendants' motion for summary judgment is therefore granted, and plaintiffs' cross-motion is denied. The Clerk of the Court is directed to enter judgment in favor of defendants.

SO ORDERED.