676 F.Supp. 523 (1988)
The ASSOCIATION OF CONTRACTING PLUMBERS OF the CITY OF NEW YORK, INC., Plaintiff,
v.
LOCAL UNION NO. 2 UNITED ASSOCIATION OF JOURNEYMEN and APPRENTICES OF the PLUMBING AND PIPEFITTING INDUSTRY OF the UNITED STATES AND CANADA, AFL-CIO, Peter Salzarulo, as President, and Michael Celletti, as Secretary-Treasurer and John and Jane Doe, as members of the Union, Defendants,
Local 638 United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO, and United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO, and the Mechanical Contractors Association of New York, Inc., Intervenors-Defendants.
CONTRACTING PLUMBERS ASSOCIATION OF GREATER NEW YORK, INC., Plaintiff,
v.
LOCAL UNION NO. 1 UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF the PLUMBING AND PIPEFITTING INDUSTRY OF the UNITED STATES AND CANADA, AFL-CIO, Joseph Santoro, as President, and Frank Rutter as Secretary-Treasurer and John and Jane Doe, as members of the Union, Defendants,
United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO, and Local 638 United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO, and the Mechanical Contractors Association of New York, Inc., Intervenors-Defendants.
LOCAL UNION NO. 2 UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES *524 OF the PLUMBING AND PIPEFITTING INDUSTRY OF the UNITED STATES AND CANADA, AFL-CIO, Peter Salzarulo, Michael Celletti, Denis Noonan, Ben Fishman, Michael Eustace, Alan Rothman, Strat Scarlatos, Peter J. Bishop, John Daly, Mel Goldsmith, and Kevin O'Lenahan, Individually and as Officers of Local Union No. 2, and as Trustees and Participants to the Local 2 Pension Fund, Fringe Benefit Fund, Supplemental Benefit Fund and Contribution Fund, Holiday and Benefit Fund, Security Benefit Fund, and on behalf of the individual participants thereto, and John and Jane Doe, as members of Local Union No. 2, and Plumbers and Gasfitters Local No. 1 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO, Edward Koziarz, Donald Sclafani, Thomas Parrella, and Frank Rutter, Individually, and as Officers of Local Union No. 1, and as Trustees and Participants to the Welfare Fund of Plumbing Industry Board Plumbers Local Union No. 1, Vacation, Expense, and Holiday Fund of Plumbing Industry Board Plumbers Local Union No. 1, Additional Security Benefits Fund of Plumbing Industry Board Plumbers Local Union No. 1, Pension Fund of Plumbing Industry Board Plumbers Local Union No. 1, Trade Education Fund of Plumbing Industry Board Plumbers Local No. 1, and on behalf of the individual participants thereto, and Plumbers Local Union No. 371 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO, Frank A. LaRocca, Genaro Salzano, and Frank P. Geoffredo, Individually and as Officers of Local Union No. 371, and as Trustees and Participants to the Local 371 Pension Fund, Welfare Fund, Apprenticeship Training Fund, and Additional Security Fund, and on behalf of the individual participants thereto, Plaintiffs,
v.
The UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF the PLUMBING AND PIPEFITTING INDUSTRY OF the UNITED STATES AND CANADA, AFL-CIO, Defendant.
Nos. 86 Civ. 9005(MEL), 86 Civ. 4048(MEL) and 87 Civ. 0255(MEL).
United States District Court, S.D. New York.
January 6, 1988.
*525 Joseph S. Kaming, Elizabeth C. Kaming, New York City, for plaintiffs The Association of Contracting Plumbers of the City of New York and Constructing Plumbers Ass'n of Greater New York, Inc.
Kennedy & Casey, P.C., New York City, for plaintiffs Local 2, Local 1, and Local 371; Stanley Q. Casey, John F. Hamilton, of counsel.
Donald J. Capuano, James R. O'Connell, Francis J. Martorana, O'Donoghue & O'Donoghue, Washington, D.C., and Peter Herman, Cohen, Weiss & Simon, New York City, for defendant United Ass'n of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the U.S. and Canada.
Richard S. Brook, Mineola, N.Y., for defendant Local 638.
LASKER, District Judge.
These consolidated actions concern a decision by the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO ("UA") awarding to UA Local Union No. 638 ("Local 638"), whose members are pipefitters, exclusive jurisdiction over the installation of combination standpipe-sprinkler risers within Local 638's geographical territory.[1] *526 UA Local Unions Nos. 1, 2 and 371 ("the plumbing locals"), whose members are plumbers, and their respective employer groups, The Contracting Plumbers Association of Greater New York, Inc. and The Association of Contracting Plumbers of the City of New York, Inc. ("the employer groups"), have moved for a preliminary injunction enjoining the UA from enforcing this decision, alleging that the procedures followed in reaching the decision violated the UA Constitution and various provisions of federal labor law. The UA has moved for summary judgment dismissing all the plaintiffs' claims.[2] The motion for a preliminary injunction is denied; the motion for summary judgment is granted.

FACTS
The following facts are not in dispute. Locals 1 and 2 are local unions chartered by the United Association to represent employees engaged in the plumbing trade in, respectively, Kings and Queens counties, and Bronx and New York counties. Local 638 is a local union chartered by the United Association to represent employees engaged in the pipefitting trade in New York City and Nassau and Suffolk counties.
Plumbers and pipefitters[3] have a history of trade line jurisdictional disputes which date back to the nineteenth century. The United Association was founded in 1889 with the hopeunrealized to this dayof unifying the two trades and ending such disputes. The plumber-pipefitter dispute at issue here, concerning which local union has jurisdiction over the installation of combination standpipe-sprinklers, began in 1980. Prior to that year, standpipes, which supply water for fire hose connections, and sprinkler risers, which carry water used to feed automatic fire sprinkler systems, had been separately installed. Locals 1 and 2 and other New York City area plumbing locals had jurisdiction over the installation of standpipes and Local 638 had jurisdiction over the installation of sprinkler risers within their respective geographic jurisdictions. In 1980, however, New York City passed a law which permitted builders to combine standpipes and sprinkler risers into one pipe for installation and use in commercial buildings. After passage of this law, both the plumbers locals and Local 638 claimed trade jurisdiction over installation of the combination standpipe-sprinkler risers.
In the fall of 1980, Local 638 requested Martin Ward, who was then UA General President, to assign an International Representative as provided under § 4 of the UA Constitution to resolve its trade dispute with Local 2 over the combination standpipe-sprinkler risers.[4] Joseph Petrucelli, *527 who was assigned as International Representative, met with the interested parties, investigated the dispute, and on November 19, 1980, awarded the disputed work to Local 638. Locals 1 and 2 then appealed this decision to General President Ward, who affirmed International Representative Petrucelli's decision on September 17, 1981. Local 2 then appealed General President Ward's decision to the UA General Executive Board. On April 23, 1982, after a hearing, the General Executive Board held that in New York City "the work of installing a combination standpipe-sprinkler riser is the work of either Local 2 or Local 638."[5] The effect of this decision, then, was to allow both Local 638 and Local 2, as well as the other plumbing locals, to install these combination standpipe-sprinkler risers in New York City.
Next, Local 638 appealed the General Executive Board's decision to the 33rd Convention of the United Association, pursuant to § 219 of the UA Constitution.[6] The 33rd Convention was held in Las Vegas, Nevada from July 28, 1986 through August 1, 1986. Presiding over the convention was General President Marvin J. Boede, who was first elected in October 1982 and was re-elected to a five year term on the second day of the convention, July 29, 1986. Under UA Constitution § 26, governing the appointment of standing committees at the UA Convention, Boede appointed the members of the Committee on Appeals and Grievances ("the Appeals Committee"). On the first day of the convention, July 28, 1986, the names of the members appointed to the Appeals Committee were announced to the convention, and Local 638's appeal, the only appeal filed to the convention, was referred to the Appeals Committee for review. The following day, July 29, the record of the appeal was submitted to the Committee, and on July 30 and 31, the Committee met in formal session and received testimony and other evidence on the dispute. J. Russell St. Eloi, chair of the Appeals Committee, drafted a report to the convention delegates on Local 638's appeal which he believed would be supported by a majority of the Committee's members. He completed this draft on the evening of July 31, 1986.
On Friday morning, August 1, 1986, before the final session of the convention convened, Boede had a meeting with his staff at which they discussed the plumber-pipefitter dispute and the possibility that a special committee should be appointed to resolve the dispute.
Also on the morning of August 1st, the Appeals Committee voted eighteen to five to recommend denial of Local 638's appeal. The Committee's final report, based on St. Eloi's draft, was completed after the Convention was already in session and was brought to the Convention's floor for delivery to the delegates. St. Eloi then identified the twenty-five members of the Committee and James Supple, Secretary of the Committee, read the Committee's report and recommendation. In brief, the Committee reported that "the decision of the General Executive Board was the right decision *528 in 1982, is the right decision today and the fair decision" and recommended that Local 638's appeal be denied.[7] The Committee then moved for adoption of its report.
After the Committee's report, General President Boede asked the delegates: "Delegates, you've heard the report of your Grievance and Appeals Committee. Their recommendation is denial of the appeal. Is there any discussion?"[8] Boede then recognized twelve speakers, two from each of the six microphones positioned throughout the floor. Of the delegates who spoke, about half favored adoption of the report and half advocated its rejection. After the twelfth speaker had concluded his remarks, there were about fifty to sixty delegates lined up at the microphones waiting to speak. The videotape of the convention, which the parties submitted for the court to review, indicates that several delegates called from the floor to "call the question" and to "vote on the question." Boede then made the following statement, as recorded in the official convention transcript:[9]
Thank you, Brother. I'm going to suggest something. I've been around this problem for a long, long time. I have never really been involved in it. I have seen the buck passed so many times on this problem that it's about worn out, but even though it is worn out, it's right here today.
It's been badly handled. There's absolutely no question about it.
(Applause)[10]
But I have not badly handled it.
(Applause)
I want permission from this convention to appoint a committee and that committee to solve this problem without any appeal, and I would entertain such a motion.[11]
The motion has been made to allow the General President to appoint a committee to solve this problem, that decision not to be appealed by anybody.
All in favor, signify by saying aye.
Opposed.
The ayes have it, and it's so ordered.
(Applause)
The videotape confirms that, by voice vote, the motion passed by a significant majority.
After Boede ruled that the motion had been adopted, he paused for about half a minute, then proceeded to thank everyone who had participated in the convention. After several minutes of concluding remarks, the convention was adjourned sine die.
After the convention, Boede appointed six members to the committee established at the convention to consider Local 638's appeal ("the Special Committee"). Two members of the Special Committee were members of pipefitters local unions; two were members of plumbers local unions; and two were members of combination local unions which represent both plumbers and pipefitters. Boede himself served as chair of the committee. The Special Committee met in Washington, D.C. on October 27-29, 1986 to consider the appeal. No further oral testimony was heard, but all the evidence considered by both the General Executive Board and the Convention Committee on Appeals and Grievances was *529 available to the committee. On October 29, the Special Committee issued its unanimous decision:
The Committee has studied all the documents submitted by the parties and the prior decisions in this case and finds that the work in dispute  installation of combination standpipe-sprinkler risers in the territorial jurisdiction of Local 638  is the work of members of Local 638.
It is the Committee's finding that this work falls squarely within Section 16 of the 1914 Trade Line Agreement covering the UA locals in the New York City area and is the work of Steam Fitters of Local 638. Section 16 is clear and unambiguous and the Committee has no problem interpreting it and applying it in this case.[12]

DISCUSSION
Summary judgment must be granted under Fed.R.Civ.P. 56 if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The Supreme Court has recently stressed that under Rule 56 the mere existence of factual disputes will not preclude the granting of summary judgment unless the facts at issue are "material" and the dispute is "genuine," and it has provided guidance as to when these requirements are met:
As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.... More important ..., summary judgment will not lie if the dispute about a material fact is not "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.
....
... The inquiry performed is the threshold inquiry of determining whether there is the need for a trial  whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2510, 2511, 91 L.Ed.2d 202 (1986).
Here, although the plumbing locals and their employer groups have sued the UA on numerous statutory and contract theories, the essence of their claims is that General President Boede acted arbitrarily or in bad faith by 1) suggesting, recognizing and putting to a vote of the 33rd Convention delegates the motion creating the special committee to decide the combination standpipe-sprinkler riser dispute; and 2) unduly influencing the final recommendation of this special committee in favor of Local 638. These claims must be reviewed bearing in mind the precept that:
[c]ourts have no special expertise in the operations of unions which would justify a broad power to interfere. The internal operations of unions are to be left to the officials chosen by the members to manage those operations except in the very limited instances expressly provided by [federal labor statutes].
Gurton v. Arons, 339 F.2d 371, 375 (2d Cir.1964); accord, Sheldon v. O'Callaghan, 497 F.2d 1276, 1281 (2d Cir.), cert. denied, 419 U.S. 1090, 95 S.Ct. 681, 42 L.Ed.2d 682 (1974); Felton v. Ullman, 629 F.Supp. 251, 254-55 (S.D.N.Y.1986). Accordingly, courts should be exceedingly reluctant to substitute their judgment for that of union officials in the interpretation of the union's constitution and rules, see Local 334 v. United Ass'n of Journeymen, 669 F.2d 129, 131 (3d Cir.1982); Stelling v. Intern. Broth. of Elec. Workers, 587 F.2d 1379, 1388 (9th Cir.1978), cert. denied, 442 U.S. 944, 99 S.Ct. 2890, 61 L.Ed.2d 315 (1979); Vestal v. Hoffa, 451 F.2d 706, 709 (6th Cir.1971), cert. denied, 406 U.S. 934, 92 S.Ct. 1768, 32 L.Ed.2d 135 (1972); Felton, 629 F.Supp. at 255. The proper judicial inquiry is "`whether there was arguable *530 authority for the officer's act from the officer's viewpoint at the time, not from a court's more sophisticated hindsight.'" Stelling, 587 F.2d at 1389 n. 10 (quoting D. Leslie, Federal Courts and Union Fiduciaries, 76 Colum.L.Rev. 1314, 1319 (1976)); accord, Felton, 629 F.Supp. at 255.
After considering the transcript and videotape of the 33rd UA Convention as well as the numerous affidavits and other items of documentary evidence in this action in light of the substantive law governing this action, which, as noted above, disfavors unnecessary interference by courts in intra-union affairs, I conclude that the plumbing locals and their employer groups have failed to raise a genuine issue of material fact as to the proposition that Boede acted either arbitrarily or in bad faith, and that a trier of fact could not reasonably resolve this dispute in plaintiffs' favor. Although plaintiffs have requested a continuance to perform further discovery under Rule 56(f), I conclude that they have failed to make a sufficient showing that such discovery is timely or justified. Accordingly, summary judgment is granted on all claims.

I. Plaintiffs' Claims under the UA Constitution

Plaintiffs' central claim is that Boede's actions with regard to Local 638's appeal both during and after the UA convention breached the UA constitution. Plaintiffs argue that Boede's appointment of the Special Committee violated the UA Constitution because, inter alia, only the Standing Committee on Appeals and Grievances is constitutionally established to resolve appeals made to the General Convention, and, "[s]ince the Committee on Appeals and Grievances was the constitutionally established standing committee, no other committee could validly be appointed to perform the task of this standing committee."[13] In addition, plaintiffs allege that Boede violated the Rules of Order for United Association Conventions ("UA Rules of Order") and Robert's Rules of Order which, under § 27 of the UA Constitution, "control in all cases not provided for" in the UA Rules of Order. Both sets of rules are incorporated into the UA Constitution.
Breach of an international union's constitution, if proven, is actionable under § 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a). See United Association of Journeymen v. Local 334, 452 U.S. 615, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981) (suit by local union alleging violation of international union's constitution falls within jurisdiction of federal district court under LMRA § 301(a)). However, to prevail on their claim that Boede violated the UA constitution, plaintiffs must show either that Boede's interpretation of the UA constitution was unreasonable or that Boede acted in bad faith:
[W]hen the union officials have offered a reasonable construction of the constitution, and no bad faith has been shown, the court should not disturb the union officials' interpretation.
Stelling, 587 F.2d at 1389; see also, Local 334, 669 F.2d at 131. The question is not "the ultimately correct interpretation" of the UA constitution but whether the UA's interpretation is "patently unreasonable." Local 334, 669 F.2d at 131.

A. Reasonableness

Plaintiffs' claims that Boede's actions were unreasonable under the UA constitution fall into two categories: they charge that the vote to refer Local 638's appeal to the special committee violated substantive provisions of the UA constitution and that the procedure by which the vote was put to the delegates violated procedural rules which the UA constitution incorporates.
First, plaintiffs attack the propriety of the vote to establish a special committee to decide Local 638's appeal, arguing that an appeal to the General Convention must be decided by the Convention delegates. Because this claim, as discussed above, presents "the purely legal question of patent unreasonableness," it is appropriate to decide it on a motion for summary judgment. Local 334, 669 F.2d at 131; accord, *531 Lucas v. Bechtel Corp., 800 F.2d 839, 850 (9th Cir.1986).
Section 219 of the UA Constitution, governing appeals to the convention, states: "Any decision, unless otherwise provided for, made by the General Executive Board shall be subject to appeal to the following convention ... but the decision shall be and remain effective ... until the following Convention decides the appeal, or otherwise determines and directs." (emphasis added). The UA argues that Boede reasonably interpreted the underlined language as giving him discretion to put to a vote the question whether Local 638's appeal should be referred to a committee rather than decided on the floor of the convention. The reasonableness of the UA's interpretation is bolstered by past precedent: the UA points to a past dispute between Local 638 and Local 1 where the convention voted, after a recommendation by a standing committee, to defer action on the appeal and refer it back to the General Executive Board for resolution after the Convention.[14] In addition, it is common practice for UA delegates to defer decision to committees or UA officers on resolutions  as opposed to appeals  presented to them at conventions: for instance, this occurred on a number of resolutions offered at the 33rd UA Convention.[15]
In response, plaintiffs argue that Boede's actions in putting to a vote the motion to appoint a special committee was not "normal procedure" and that the prior instance of referring decision on a convention appeal to a special committee is distinguishable because in that instance both parties agreed to the referral and the standing committee recommended it.
However, the inquiry to be performed here is not whether Boede's actions were "normal procedure" but whether they reflect an interpretation of the UA constitution which is patently unreasonable. This is not a case such as District Council 37 v. Wurf, 496 F.Supp. 1021, 1025-26 (S.D. N.Y.1980), where the union "failed to cite a single provision of the [union] constitution which either expressly or impliedly authorize[d]" the challenged union action. To the contrary, § 219 of the UA Constitution clearly recognizes the possibility that a UA convention may either decide an appeal "or otherwise determine[] and direct," and plaintiffs have not identified any other provision in the Constitution which clearly precludes such an alternative disposition of a convention appeal or which is even clearly inconsistent with § 219. Based on both the clear language of § 219 and the general  if not identical  precedent in UA history for the proposition that appeals to the convention are not always decided by vote of the delegates at the convention, as a matter of law it cannot be concluded that the referral of the Local 638 appeal to the Special Committee was unreasonable under the UA Constitution.
Second, plaintiffs argue that Boede violated various provisions of Robert's Rules of Order and the UA Convention Rules, which are incorporated into the UA Constitution. These claims must be reviewed bearing in mind "the impracticability of this court ... sitting as Grand Parliamentarian of [the union's] meetings," Rothstein v. Manuti, 235 F.Supp. 48, 50 (S.D.N.Y. 1964), as well as the principle of non-interference with intra-union affairs discussed above. See also Bartosh v. Letter Carriers, 122 L.R.R.M. (BNA) 2547, 2548 (M.D. Ga.1985) ("The mechanics of the ... vote complained of by the plaintiff may or may not have been in accord with Robert's Rules of Order, but that dispute merely involves an internal union concern and is not a matter requiring federal judicial intervention."). Moreover, even if it were appropriate to consider plaintiffs' claims on the merits in detail, a review of the transcript and videotape, as well as the applicable rules, provides no support for plaintiffs' claims.
*532 First, as a legal matter, plaintiffs' procedural objections have not been properly preserved. Under Robert's Rules of Order § 23 and the UA Rules of Order, in order to preserve an objection, a timely point of order must be made when the alleged breach in procedure occurs and the matter can still be corrected by the presiding officer. Here, the transcript and the videotape do not indicate that any point of order was raised in objection to Boede's handling of the Local 638 appeal. In addition, thirty-two of the thirty-four UA convention sergeants-at-arms who were stationed at the microphones available to delegates wishing to speak[16] have submitted affidavits stating that after the Special Committee vote, no delegates raised an objection to the vote or indicated to them that they wanted to speak.[17]
In order to rebut this argument and to support their claim that Boede acted unreasonably and in bad faith, plaintiffs allege that certain delegates attempted to raise points of order but were ignored by Boede. For instance, Thomas Parella, a Local 1 Business Agent, states in an affidavit that he "yelled out `point of order' in an attempt to oppose Boede's [allegedly] illegal and undemocratic procedure."[18] However, neither the videotape nor the transcript supports the claim that Parella or anyone else raised a point of order or any objection after the vote. In addition, on deposition Parella testified that Boede did not hear his point of order and that Parella did not speak to the sergeant-at-arms stationed at the nearest microphone.[19] Hence, these contentions cannot be considered to raise genuine issues of material fact.[20]
Second, without giving Boede's actions the court's official imprimatur, review of the transcript and videotape indicates that, overall, Boede conducted the debate over Local 638's appeal and the ensuing vote in an orderly and open manner. Boede recognized twelve speakers to debate the Grievance and Appeals Committee's recommendation and then suggested the Special Committee motion. It is clear from the videotape that a number of delegates responded by calling out "so moved." Boede then put the motion to a voice vote, and the videotape records that the motion passed by a sound majority. After the vote was taken, Boede paused for at least half a minute before proceeding to other business, during which time the videotape indicates no unrest or commotion from the convention floor.
In addition, the UA has submitted an opinion by William J. Evans, a member of the authorship team of Robert's Rules of Order Newly Revised (1981), stating that the specific procedures followed by Boede were "entirely proper and correct" under Robert's Rules of Order and the UA Convention Rules of Order.[21] Plaintiffs have submitted no corresponding expert opinion. It is not necessary, however, to reach a conclusion as to whether Boede's actions were "entirely proper and correct": as discussed above, the only question before this court is whether Boede's actions were patently unreasonable under the applicable rules. While it would be inappropriate and impracticable for this court to enter into a *533 detailed analysis of the parliamentary correctness of Boede's actions, it cannot be concluded that Boede's procedures had no reasonable basis in Robert's Rules and the Convention rules.[22]
In sum, plaintiffs have not presented material evidence which could allow a trier of fact reasonably to conclude that the procedures Boede employed were based on a patently unreasonable interpretation of either Robert's Rules and the UA Convention Rules or the substantive provisions of the UA Constitution.

B. Bad Faith Claims

Plaintiffs claim that Boede acted in bad faith both at the convention, by improperly maneuvering the convention to refer Local 638's appeal to the Special Committee, and after the convention, by "handpicking" the members of the Special Committee and improperly influencing the Special Committee's decision.
Even in a case where state of mind is at issue, a plaintiff may not:
defeat a defendant's properly supported motion for summary judgment ... without offering any concrete evidence from which a reasonable juror could return a verdict in his favor and by merely asserting that the jury might, and legally could, disbelieve the defendant's denial....
Anderson, 106 S.Ct. at 2514. Plaintiffs may not rely on conclusory allegations, but most come forward with specific facts supporting their position. See Operative Plasterers' and Cement Masons' International Assoc. Local 202 v. Metropolitan New York Dry Wall Contractors Assoc., 543 F.Supp. 301, 311-12 (E.D.N.Y.1982) (granting summary judgment dismissing claim that international union acted in bad faith in withdrawing jurisdiction from local union, where local unions "pointed to nothing in the arrangements complained of that permits an inference of bad faith on the part of the International, beyond the unavoidable consequence that the interests of some were benefitted and those of others disadvantaged"); Felton, 629 F.Supp. at 256 (granting summary judgment to defendant union president, where plaintiff union member offered no factual basis for claim of discrimination); Plumbers, Local 605 v. United Association of Plumbers and Pipefitters, 101 L.R.R.M. (BNA) 3054, 3055 (S.D.Ind.1979) (granting summary judgment on claim by plaintiff local union that UA acted in bad faith, where UA submitted affidavits which "clearly illustrate the empirical reason" for its action and "the plaintiffs' allegation of `bad faith' amounts to little more than `sour grapes.'"), aff'd without opinion, 601 F.2d 600 (7th Cir.1979).
Here, as in Plumbers, Local 605, the UA has produced evidence tending to demonstrate both that there was a reasonable, good faith rationale for Boede's actions with regard to the Local 638 appeal at the Convention and that Boede made no attempt to force the Special Committee to decide the dispute in Local 638's favor. In the face of UA's affidavits, plaintiffs have not met their burden under Rule 56(e) to *534 demonstrate "specific facts showing that there is a genuine issue for trial."
First, Boede has stated, both in his affidavit and on deposition, that he suggested the motion to refer the dispute to the Special Committee in order to avoid what he believed to be the potential for a divisive dispute in the UA between plumbers and pipefitters:
Plumber-pipefitter disputes are of particular concern in the United Association because of its history.... As General President, I represent all United Association members and I consider it to be my highest mandate to see that this union remains united, and therefore I am extremely conscious of any problem or dispute which could escalate from a local trade dispute between a plumber local union and a pipefitter local union into a broader national plumber-pipefitter dispute. At the 1986 Convention I was beginning to hear and see evidence that the Local 638/Local 2/Local 1 dispute was turning into one of those broader plumber-pipefitter disputes which could be very harmful to the United Association. A dispute localized in New York was beginning to have national implications. I believe it to be one of my most important functions to see that trade jurisdiction disputes are not resolved by counting up who are plumbers and who are pipefitters and allowing the most powerful or most numerous trade classification to prevail. These issues must be handled on the merits.[23]
The objective reasonableness of Boede's concern is supported by the undisputed fact that the Appeals Committee's recommendation stirred intense debate from the floor: fifty to sixty delegates lined up for a chance to speak on the recommendation, and the twelve delegates who were recognized, about a third of whom were members of local unions not directly affected by the appeal, stated their opinions in forceful terms. The videotape reveals that many of these statements were greeted with loud boos and applause from the floor.
Plaintiffs argue that summary judgment may not be granted because the explanations which Boede gave for his actions at the convention, on deposition and in his affidavits, are "unreasonable, contradictory and inconsistent."[24] However, plaintiffs have pointed to no specific significant contradictions in Boede's testimony, which, to the contrary, appears to have been consistent throughout.[25]
Next, plaintiffs argue that Boede's bad faith can be inferred from the undisputed fact that, when he met with International Representative Petrucelli and other staff members on the morning of August 1st, prior to the beginning of the last convention day, he discussed the possibility of referring Local 638's appeal to a special committee if "this thing turned sour" on the convention floor.[26] However, although "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," Anderson, 106 S.Ct. at 2513, there is simply no basis for drawing an inference of bad faith because Boede's actions at the convention were "preplanned" rather than spontaneous.
*535 Plaintiffs also contend that there is a factual dispute as to whether Boede maneuvered the convention session in order to make the Local 638 appeal the last item of business at the convention, in order to rush through his improper motion. However, not only has Boede denied this, but St. Eloi, chair of the Appeals Committee, has submitted an affidavit stating that there was no effort to stall the presentation of the standing committee's report to the convention, and that, to the contrary, it was "rushed to the Convention podium" as soon as it was completed.[27] Plaintiffs have offered no evidence to the contrary.
With regard to plaintiffs' allegations about the Special Committee, the UA has submitted evidence that the Committee's composition reflected no overt organizational bias: the Committee consisted of two members each from straightline plumbers' locals, straightline pipefitters' locals, and combination plumber-pipefitters' locals.[28] Although Boede acted as chair of the Committee, all six members have submitted affidavits stating that no one discussed the issue with them prior to the Special Committee meeting, that no one attempted to influence their decision in any way and that the written report of the Committee accurately represented the Committee's unanimous decision.[29]
Significantly, plaintiffs have offered no evidence that Boede had any motive to try to "fix" the outcome of the Local 638 appeal or even that, at the time of the convention, Boede had reached the conclusion that the decision of the Grievance and Appeals Committee's recommendation was incorrect on the merits. First, the undisputed evidence indicates that Boede had a productive and harmonious relationship with Locals 1 and 2 before the 33rd Convention.[30] Second, although Boede himself appointed the members of the Appeals Committee, just as he later appointed the members of the Special Committee, both Boede and St. Eloi have sworn that Boede made no effort to indicate to the Appeals Committee what position it should take at the 33rd Convention, and that, subsequent to the convention, Boede has in no way criticized or penalized the Appeals Committee or its members for their recommendation. Finally, there is no evidence that Boede  or anyone else at the convention  knew whether the Appeals Committee's recommendation would have been adopted by the delegates had it gone to a vote on the floor.[31]
In sum, I conclude that plaintiffs have failed to meet their burden under Rule 56(e) to point to specific facts showing that there are genuine issues for trial on their claim that Boede acted in bad faith in connection with Local 638's appeal.

C. Plaintiffs' Request for Further Discovery under Rule 56(f)

Plaintiffs have requested that the UA's summary judgment motion be denied under Fed.R.Civ.Pro. 56(f), which provides that where:
it appear[s] from the affidavits of a party opposing the [summary judgment] motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit ... discovery to be had....
Plaintiffs have stated that 1) they "would like to depose Mr. Boede again regarding the reasons for his actions at the Convention as attested to in his Second Affidavit ... Mr. Boede's explanations are inconsistent and contradictory"; 2) "further discovery is needed on Mr. Boede's conduct at the Special Committee meetings held in October, 1986"; and 3) "it is necessary to conduct depositions of the six-member Boede *536 Committee and of the thirty-four Sergeants-at-Arms at the Convention."[32]
The court of appeals for this circuit has held that:
Rule 56(f) requires the opponent of a motion for summary judgment who claims to be unable to produce evidence in opposition to the motion to file an affidavit explaining:
1) the nature of the uncompleted discovery, i.e., what facts are sought and how they are to be obtained; and
2) how these facts are reasonably expected to create a genuine issue of material fact; and
3) what efforts the affiant has made to obtain these facts; and
4) why those efforts were unsuccessful.
Burlington Coat Factory Warehouse v. Esprit de Corp., 769 F.2d 919, 926 (2d Cir.1985). Plaintiffs' request under Rule 56(f) is deficient under this standard.
First, plaintiffs have failed to demonstrate what specific information they seek, the legal significance of this information, and how the discovery which they seek is reasonably expected to create a genuine issue of material fact. As to Boede, plaintiffs' claim that Boede's testimony on deposition and his statements in his affidavit are so inconsistent as to meet the standard for bad faith has already been rejected. As to the discovery sought from the Special Committee members and the sergeants-at-arms, all have whom have already submitted affidavits, plaintiffs have not explained what type of information they seek from these delegates which they do not already have or how these depositions could add to the already extensive record in any meaningful way.
Second, plaintiffs have already had an opportunity to take the discovery which they now request. During the course of this consolidated litigation, which has now been pending for over a year, plaintiffs  in January 1987  conducted a two-day deposition of Boede which covered both his actions at the 33rd Convention and his participation in the Special Committee. In addition, plaintiffs deposed one of Local 638's business agents and conducted significant document discovery. Plaintiffs, however, made no effort to seek additional discovery from Boede or any discovery at all from the Special Committee members and the sergeants-at-arms until after the UA filed its summary judgment motion in the plenary action in September 1987.
Under these circumstances, plaintiffs' request for further discovery under Rule 56(f) is denied. See Burlington Coat Factory, 769 F.2d at 928 ("A party who both fails to use the time available and takes no steps to seek more time until after a summary judgment motion has been filed need not be allowed more time for discovery absent a strong showing of need.").

II. Plaintiffs' Other Claims
Plaintiffs allege a variety of additional claims against the UA, including infringements of the guarantees of voting rights and free speech set forth in the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411, and an infringement of the UA's duty of fair representation to its locals. Because the insufficiency of the factual allegations supporting these claims has already been discussed above, these claims, all of which must be dismissed as a matter of law, will only be discussed briefly.
First, the court of appeals for this circuit has emphasized that
[t]he provisions of the L.M.R.D.A. were not intended by Congress to constitute an invitation to the courts to intervene at will in the internal affairs of unions.
....
... So long as the union in reaching its decision violates no provision of law, we judges should resolutely keep our hands off.
Gurton, 339 F.2d at 375. See also Amirault v. Shaughnessy, 749 F.2d 140, 144-45 (2d Cir.1984) (LMRDA does not "prohibit *537 union political structures that may seem to intrude on theoretical rights but that do not in a practical way undermine the basic democratic nature of the union's political processes"). Here, plaintiffs claim that Boede's actions at the UA convention violated their voting rights under LMRDA § 101(a)(1) and their right to free speech under LMRDA § 101(a)(2). Both claims are without merit. Section 101(a)(1), which provides that "[e]very member of a labor organization shall have equal rights ... to vote in elections or referendums of the labor organization ... subject to reasonable rules and regulations," does not provide union members with a blanket "right to vote" on all issues: instead, it protects "the equal right to vote, equal to other members of the union." Guarnaccia v. Kenin, 234 F.Supp. 429, 439 (S.D.N.Y.1964) (dismissing § 101(a) claim because "there is no allegation that plaintiff is being treated any differently from other union members in connection with voting rights"), aff'd sub nom. Gurton v. Arons, 339 F.2d 371, 375 (2d Cir.1964). LMRDA § 101(a)(2) provides that "[e]very member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments or opinions; ... subject to the organization's established and reasonable rules pertaining to the conduct of meetings." As discussed above, there is insufficient evidence of record to allow a reasonable juror to conclude that Boede's actions had the effect of impermissibly stifling debate or dissent. Accordingly, these claims must be dismissed.[33]
Second, plaintiffs' claim that the UA owed and breached a duty of fair representation to its local unions with regard to its actions during the UA convention must be dismissed. The court of appeals for this circuit has recently clarified that:
a matter that involves only the relationship between the union and its members and does not also involve the employer is viewed as an internal union matter that does not give rise to a duty of fair representation.
Price v. UAW, 795 F.2d 1128, 1134 (2d Cir.1986), appeal pending.
Plaintiffs' additional claims, including claims under state contract law and under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq., and the employer groups' due process claims, are also without merit.[34]

* * *
In sum, the UA's motion for summary judgment is granted, and plaintiffs' motions for a preliminary injunction are accordingly denied. The stay granted to plaintiffs in the decision issued in this action on June 29, 1987 is extended for a period of ten days from the filing of this opinion to enable plaintiffs to apply to the Court of Appeals for a further stay.
Submit proposed judgment on notice.
NOTES
[1] The complicated procedural history behind these three consolidated actions was discussed in full in an extensive oral decision of this court issued on the record on June 29, 1987. In brief, after the committee appointed by President Boede issued its decision in favor of Local 638, on November 20, 1986, and December 1, 1986, Locals 2 and 1, respectively, went into arbitration with their employer groups, without notice to the UA or Local 638, over their responsibility to continue to perform the combination standpipe-sprinkler riser work which had been awarded to Local 638. The arbitrator who presided over both arbitrations ruled in both cases that the plumbing locals should continue to perform the combination work. Then, again without notice to the UA and Local 638, the plumbing locals' employer groups sought and received, without opposition, confirmation of the arbitration awards and entry of permanent injunctions in this court. After the two permanent injunctions were entered, the UA, Local 638, and Local 638's employer group, the Mechanical Contractors Association of New York, Inc. ("MCA"), intervened in the two actions, which were then consolidated. In January 1987, Locals 1, 2 and 371 brought a plenary action against the United Association directly attacking the UA's decision to award the combination work to Local 638. This action was consolidated with the two earlier actions. On June 29, 1987, this court granted a motion by the UA, Local 638 and MCA to vacate the permanent injunctions and set aside the underlying arbitration awards on the grounds that 1) issues of UA local union trade line jurisdiction are governed by the UA and are non-arbitrable and 2) the bilateral proceedings between the plumbing locals and their employer groups without notice to the UA and Local 638 was insufficiently adversarial. The decision to vacate the injunctions was stayed to give the plumbing locals and their employer groups an opportunity to move for preliminary relief in the plenary action. The decision to vacate the injunctions and set aside the arbitration awards is currently on appeal.
[2] In this decision, the plumbing locals and their employer groups will be collectively referred to as "plaintiffs" because they are plaintiffs in the plenary action.
[3] Pipefitters are also interchangeably called "steamfitters." See Affidavit of Marvin J. Boede in Support of the United Association's Motion to Intervene at ¶ 6 (December 8, 1986).
[4] Section 4 of the Constitution of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, ("UA Constitution"), provides in relevant part that:

A Local Union involved in a trade or craft dispute shall immediately report the dispute to the General President who shall assign an International Representative to investigate the facts, hear each of the Local Unions involved and render a decision. The decision of the International Representative may be appealed to the General President who may affirm, reverse or modify the International Representative's decision. Any Local Union, party to the dispute, may appeal the decision of the General President to the General Executive Board.
Union Exhibits to Memorandum of Law and Opposing Affidavits ("Plumbing Locals Exhibits"), Exhibit C, UA Constitution at § 4.
[5] Plumbing Locals Exhibit A, General Executive Board Decision at ¶ 4.
[6] Section 219 of the UA Constitution states in relevant part:

Any decision, unless otherwise provided for, made by the General Executive Board, shall be subject to appeal to the following convention, if so desired, within sixty ... days after notification of such decision is mailed to the parties.... [T]he decision shall be and remain effective for all purposes during the pendency of any such appeal ... until the following Convention decides the appeal, or otherwise determines or directs.
Plumbing Locals Exhibit C, UA Constitution at § 219.
[7] Affidavits Submitted on Behalf of the United Association's Motion for Summary Judgment and in Opposition to Preliminary Injunction Motions ("UA Affidavits"), Affidavit 4, Affidavit of M.E. Moore, Exhibit 1, UA Journal, December 1986 ("33rd Convention Daily Proceedings") at 213.
[8] Id.
[9] Id. at 215.
[10] The periods of audience applause noted during Boede's speech are recorded both in the official transcript of the convention, Exhibit 1 to the Affidavit of M.E. Moore, and in the videotape of the convention, which was submitted by the parties and reviewed by the court.
[11] As discussed below, although plaintiffs argue that Boede impermissibly made this motion himself, this dispute does not rise to the level of a genuine issue of material fact. There is no support on record for this contention: to the contrary, it is clear from the videotape of the convention that after Boede said that he would entertain such a motion, a number of delegates called out "so moved."
[12] See Plumbing Locals Exhibit L at 2-3, Decision of Committee Appointed to Resolve Dispute Between Local 2 and Local 638 (October 29, 1986).
[13] Memorandum of Law in Support of the Motion Filed by Local 2, Local 1, Local 371 and their Respective Fringe Benefit Funds for a Preliminary Injunction at 46 (July 29, 1986).
[14] See UA Affidavit 1, Affidavit of Marvin J. Boede ("Boede Affidavit") at ¶ 11 (August 12, 1987).
[15] See, e.g., Exhibit to UA Affidavit 4, 33rd Convention Daily Proceedings at 153-54, 159-163, 179, 196, 197, 199-201, 203, 206-07.
[16] The remaining two sergeants-at-arms were unavailable to provide affidavits due to illness. United Association's Statement of Facts as to which there is No Genuine Issue at 6 n. 3.
[17] See UA Affidavits 11-42.
[18] Supplemental Union Exhibit 10, Affidavit of Thomas Parella at ¶ 9 (July 7, 1987).
[19] Supplemental Union Exhibit 12, Deposition of Thomas Parella at 150.
[20] In addition, Alan Rothman, Michael Celletti and Kevin O'Lenahan, officers of Local 2, state in affidavits that when Boede began to speak on the Local 638 appeal, sergeants-at-arms told each of them to sit down because there would be no further debate. None of these three delegates states, however, that he told the sergeants-at-arms that he objected to being told to sit down, or that he made any actual attempt, from the floor, if not from a microphone, to raise a point of order. Significantly, sixty-two plumber delegates were seated at the convention to the left of the podium near the front of the convention floor, in a favorable position to make themselves heard without a microphone. UA Affidavit 1, Boede Affidavit at ¶ 14.
[21] UA Affidavit 3, notarized letter of William J. Evans at 1 (May 4, 1987).
[22] Briefly, plaintiffs' most significant allegations of violations of the convention rules were that Boede 1) improperly cut off debate on the Appeals Committee's vote; 2) failed to take a vote on the Appeals Committee's recommendation; 3) failed to recognize motions to "call the question;" 4) improperly participated in the debate and proposed his own motion; 5) failed to allow debate on the motion to appoint a special committee; and 6) appointed a special committee to perform a task already assigned to a standing committee. There is no factual dispute between the parties as to allegations 1-3 and 5: the UA disputes only plaintiffs' characterization of these actions as improper. These actions appear to have a reasonable basis under, inter alia, Rules 1, 8, 9 and 13 of the UA Rules of Order. Allegation 4 presents a factual question but it does not rise to the level of a material issue of disputed fact: it is clear from the videotape and the transcript that Boede took no position on the merits of the debate over Local 638's appeal, and, as discussed above at n. 11, it is clear from the videotape that a number of delegates "so moved" to refer the appeal to a special committee after Boede suggested such a motion. Allegation 6 does not raise factual issues and is also without merit: the standing Appeals Committee was assigned the task of making a recommendation to the convention, and it discharged this assignment. The convention then voted to refer decision on the recommendation to the Special Committee.
[23] UA Affidavit 1, Boede Affidavit at ¶ 9.
[24] Plaintiff's Memorandum of Law in Opposition to the United Association's Motion for Summary Judgment at 11 (Sept. 21, 1987).
[25] Plaintiffs' two main examples of inconsistencies in Boede's explanations can be quickly dismissed. First, plaintiffs argue that Boede on deposition justified his actions on the basis that there was a threat of physical fighting on the convention floor, and then later retreated to a position that the threat was that of a political intra-union division. However, the excerpts from Boede's deposition submitted to the court make it clear that his explanation focussed from the start on the fear of a political, rather than a physical, plumber-pipefitter fight. Second, plaintiffs argue that Boede's explanation that he felt the dispute had been "badly handled" because it had dragged on so long was inconsistent with his suggestion of deferral of decision to the Special Committee. However, that Boede may have been concerned with the protraction of the dispute as well as its intensity is not inconsistent, and it is certainly not evidence of bad faith.
[26] Reply Brief in Support of the United Association's Motion for Summary Judgment, Exhibit 1, Deposition of Marvin J. Boede at 112 ("Boede Deposition").
[27] UA Affidavit 2, St. Eloi Affidavit at ¶ 8.
[28] UA Affidavit 1, Boede Affidavit at ¶ 7.
[29] UA Affidavits 5-10.
[30] See UA Affidavit 1, Boede Affidavit at ¶¶ 3-4.
[31] In fact, if, as Boede believed, the floor debate reflected a dispute which pitted plumbers against pipefitters without regard to the merits of the dispute, Local 638 would have been favored in a convention vote, because pipefitters outnumber plumbers in the UA by a ratio of two to one. See Boede Deposition at 257.
[32] Affidavit of Stanley Q. Casey in Opposition to the Summary Judgment Motion Filed by the United Association at ¶ 3 (October 7, 1987).
[33] This action is completely distinguishable on its facts from Navarro v. Gannon, 385 F.2d 512, 520 (2d Cir.1967), cert. denied, 390 U.S. 989, 88 S.Ct. 1184, 19 L.Ed.2d 1294 (1968), where the court of appeals for this circuit found a violation of § 101(a)(2) where an international union threatened to take over and run meetings of one of its locals, because § 101(a)(2) "encompasses the right to meet under the direction of [the local union's] own officers untrammelled by outsiders who by their own admission are dissatisfied with the course of action freely taken by the local." No such drastic action on the part of the international is even alleged here.
[34] It is noted that the UA has made a strong argument that the employer group plaintiffs are without standing in the plenary action, which concern exclusively intra-union affairs. See Automobile Workers v. Brock, 477 U.S. 274, 106 S.Ct. 2523, 2528-29, 91 L.Ed.2d 228 (1986). In addition, many of the claims asserted by the employer groups' have already been resolved in the UA's favor by the decision issued in this action on June 29, 1987.